## VICTOR TAPEDO v. STATE.

No. A-5452.   Opinion Filed May 1, 1926.
(245 Pac. 897.)

166

Bristow & McFadyen, for plaintiff in error.

Geo. F. Short, Atty. Gen., and V. P. Crowe, Asst. Atty. Gen., for the State.

EDWARDS, J. The plaintiff in error, hereinafter called defendant, was convicted in the district court of Caddo county upon a charge of murder, and his punishment fixed at imprisonment for life.

The record discloses that defendant was a young man about 24 years of age, a member of the Kiowa Tribe of Indians; married to Eloise Patterson, also a member of the tribe. They had living one child about four years of age. Prior to the 17th day of May, 1924, another Indian named Kaulaity had been paying attention to the wife of defendant; she went riding with him and on one occasion spent the night with him at Hobart; apparently they had been guilty of adultery. The defendant knew of this relation, had worried over it, and had tried to prevent his wife from associating with Kaulaity. About two weeks before

the homicide, he assaulted and beat deceased and broke her arm and one finger.  A few days before the homicide he had attempted to borrow a gun, and stated at the time he figured on killing his wife and Kaulaity.  On the night of the 17th of March, defendant and wife stayed at the home of Edgar Topah and his wife, Esther Lone Wolf. The next morning about 7:30, defendant went to the premises of J. E. Fest and borrowed from him a shotgun, saying he wanted it to kill chaparrals, and he went in the direction of the Topah home.  The deceased was in bed, and defendant shot her through the head, killing her instantly.  He then went, with the gun, into an adjoining room and told Hazel Lone Wolf he had killed his wife.  He next went to the field, where Edgar Topah was, gave the gun to Topah, and told Topah to kill him because he had killed his wife. When Topah refused, he asked him to give back the gun so that he could kill himself.  He then went to the house, got a butcher knife to kill himself, which Topah took from him.  On the Saturday before the homicide, deceased and defendant were together at Carnegie, and deceased in the presence of defendant stated she wanted to get a divorce from defendant because he treated her so mean and whipped her.

The defense was insanity.  The defendant testified that he learned some time before the homicide that his wife had been associating with Kaulaity, and this had affected his mind so that he could hardly sleep or eat; that it seemed like he was blind part of the time; that at the time of the prior injury to his wife he did not know whether he intended to hurt her or not; he did not know whether or not he went to borrow a gun a few days before the homicide; did not know what happened on the morning of the homicide, and the first he remembered after the killing was at his brother-in-law's; believed that he got the gun from Fest, but seemed like it was dark, and did not know whether he killed deceased or not.  On the matter of in-

sanity, there was considerable evidence on the part of defendant indicating that defendant was excited and acted crazy. This was sharply rebutted by the state.

The assignments of error argued in the brief may be stated as follows: The admission of incompetent evidence on the part of the state. Error of the court in instruction No. 4. Error in the closing argument of the county attorney. Misconduct of the jury. These assignments will be considered in the order presented.

Under the first assignment it is contended that the evidence of a previous assault of the defendant upon the deceased is proof of a different crime and prejudicial. The previous relations of the parties, ill treatment, and previous assaults and difficulties in homicide cases, where they are not too remote, are generally admissible as showing motive and intent, explaining the mental attitude of the parties, and as throwing light on the offense for which the defendant is being tried; it generally being said that such evidence should be restricted so that the jury may consider it only for the limited purpose for which it is admitted. Miller v. State, 13 Okla. Cr. 176, 163 P. 131, L. R. A. 1917D, 383; Koontz v. State, 10 Okla. Cr. 559, 139 P. 842, Ann. Cas. 1916A, 689; Smith v. State, 3 Okla. Cr. 629, 108 P. 418. Here a serious assault was proven only 13 days prior to the homicide, and as the cause of the trouble between defendant and deceased continued down until it culminated in the homicide, the previous relations are so closely interwoven that it was clearly admissible as tending to shed light upon the killing.

There is also complaint made that the court permitted evidence of the relation of defendant with another woman. This evidence was admitted in rebuttal, and apparently on the theory that as the defense was made that defendant was temporarily insane at the time of the killing by reason of the misconduct of his wife, it was proper to show his

relations with another as rebutting the inference to be drawn from his claim of insanity. In the case of Coffeen v. State, 22 Okla. Cr. 212, 210 P. 288, it is held that where emotional insanity is pleaded, claimed to be due to the discovery of the infidelity of the wife, it may be shown in rebuttal that defendant also had been guilty of misconduct as tending to show the condition of his mind and to rebut the inference that the mental shock or strain was sufficiently great to unseat his reason. Much the same holding is made in the case of Tingley v. State, 184 P. 599, 16 Okla. Cr. 639. In instruction No. 12, the court limits this evidence to that purpose. The admission of the evidence as limited is not error. Under this assignment is also urged that, in offering evidence as to defendant's state of mind, the court unduly restricted defendant and sustained objection to evidence offered and permitted the introduction of the same class of evidence by the state. This is directed to opinion evidence touching the sanity of defendant. We have closely scrutinized the record on this point, and conclude that the apparent difference in the ruling of the court is due to the failure of defendant to lay a proper predicate before asking the opinion of the witness. That is, failure to show sufficient observation or previous acquaintance on which to base an opinion. In cases where insanity is interposed as a defense, opinion evidence on insanity must be based upon facts submitted as a foundation for such opinion. Mere conclusions, without a showing of facts upon which such conclusion may logically be drawn, are regarded as insufficient. Queenan v. Ter., 11 Okla. 261, 71 P. 218, 61 L. R. A. 324; Lee v. State, 30 Okla. Cr. 14, 234 P. 654.

It is next argued that the court erred in instruction No. 4. This instruction informs the jury that they are the sole and exclusive judges of the credibility of the witnesses and the weight of the evidence, and advises them that in determining the weight and credit they will give to the

testimony of any witness, they may take into consideration the fairness and candor or lack thereof of any witness, his interest, bias, or prejudice, his means and opportunity of knowing the facts to which he may have testified, and then concludes:

"* * * And in this connection you are instructed that if you find and believe from the evidence that any witness has willfully testified falsely as to any material matter of fact, you may disregard the testimony of said witness."

This court on numerous occasions has condemned instructions in which the jury were informed that they may disregard the testimony of a witness unless corroborated by other credible testimony, for the reason that a jury may disbelieve and disregard the testimony of the witness even though it be corroborated. See Williams v. State, 9 Okla. Cr. 206, 131 P. 179; Sims v. State, 7 Okla. Cr. 7, 120 P. 1032; Cole v. State, 18 Okla. Cr. 430, 195 P. 901. The giving of the objectionable instruction referred to in these various cases is not necessarily reversible error. In the instant case, while we do not approve of the form of the instruction given, it will be noted that the jury are told they may disregard the testimony if they believe the witness has testified falsely and no mention of corroboration is made.

Complaint is next made of misconduct of the special counsel for the state in the closing argument. The record upon this point shows the following objection to the county attorney reading from the statutes:

"Mr. Bristow: Comes now the defendant and objects to the county attorney reading from the statutes of the state of Oklahoma when the court has fully instructed the jury as to the law in the case. That if the defendant's attorneys made any statement in regard to the insanity of the defendant, that it was this: That the court could protect the public against a person who was insane. * * *

"Mr. Pruett: The argument that the attorney for the state is making at the present time is in response and

directly in reply to that part of the statement of the attorney for the defendant where he said the defendant could be taken care of by the court—

"Mr. Bristow: I said if he was acquitted for reason of insanity at the time the crime was committed. * * *

"Mr. Pruett: That if they found him not guilty by reason of insanity, it was the duty of the court to submit the defendant to an examination and hold him until he was discharged thereby, and the statement that I make at this time is that is not the law. It is not claimed by the defendant in this case at this time that the defendant is insane at this time, but only that he was insane at the time of committing the homicide, and that the law now being read to the jury is to show that there is not law to commit the defendant to an asylum at this time, if the jury returns a verdict of not guilty by reason of insanity."

Upon the conclusion of the argument, the court instructed the jury on this point in these words:

"Gentlemen of the jury, the attorney for the defendant and the attorney for the state have both told you what in their judgment would be the future of the defendant under the law, should you find him not guilty by reason of insanity. This is a question you are not called upon to determine, and you will arrive at your verdict under the evidence introduced and the instructions of the court given you, without regard to that question."

We gather from this that defendant's counsel in arguing the insanity of defendant said, in substance, to the jury that in case defendant was acquitted by reason of insanity, the state could take care of the situation. The attorney for the state in answering this attempted to inform the jury, by reading the statute covering the disposition of insane, what might be done with an insane person. The argument of both was not a matter to be submitted to the jury. The court should have excluded it, but not having done so, he did the next best thing by advising the jury that it was no concern of theirs. We do not see how this was prejudicial to defendant.

Lastly, it is argued that there was misconduct of the jury before the case had been finally submitted to them. It is made to appear that in the course of the trial Chief Ahpeahtone, a witness for defendant, testifying by interpreter, said in referring to defendant's mental condition that, "He had eyes like a coyote or wolf." Arthur Owens, one of the jurors, during an intermission and before the case was finally submitted, asked Lewis Ware this question: "What do the Indians mean by their testimony when they say, 'His eyes looked like a coyote or drunk man's,' " and Ware told him, "It could mean he was crazy or excited or nervous." This was the extent of the showing upon this assignment. The juror testified that this statement did not affect him; that he decided on the testimony.

The action of the juror was misconduct, and in capital cases where, after the case is finally submitted to the jury, and there is a showing of misconduct, the presumption is that it is prejudicial, and the burden is on the state to show that no injury could have resulted therefrom to the defendant. Before the final submission of the case to the jury, the burden to show prejudice from an alleged misconduct is on defendant. We think it cannot be said that there is any substantial showing of prejudice by reason of the question asked by the juror of the witness, but in the trial of capital cases the jury generally should be held together during the entire course of the trial, and in the discretion of the court they may be permitted to separate before the case is finally submitted to them; but in such case the court should particularly impress upon them that they must not converse among themselves or with any one else, or permit any conversation in their hearing or presence concerning the case. We strongly condemn the action of the juror. However, the fact of the killing of deceased by defendant in the manner stated being undisputed, and the evidence of insanity, as we view the evidence, being so insubstantial, the showing of misconduct did not affect the verdict, nor

deprive the defendant of any constitutional or statutory right, and is not of sufficient importance to warrant a setting aside of the verdict.

The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.