Judy Sue FIELDS, Plaintiff in Error,

v.

STATE of Oklahoma, Defendant in Error.
No. A–12980.

Court of Criminal Appeals of Oklahoma.
Sept. 6, 1961.

Valdhe F. Pitman, Sam W. Moore, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Owen J. Watts, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

The plaintiff-in-error, Judy Sue Fields, and herein referred to as the defendant, was charged in the District Court of Oklahoma County by information with the crime of robbery with firearms. The charge was based upon an armed robbery of the 7–11 Food Store located at 2811 Dorchester in Oklahoma City. It was alleged that the defendant acted conjointly with others to commit the robbery, as a "lookout", a severance was granted and the defendant was tried separately in the instant case. The trial was before a jury which found the defendant guilty and left the punishment to the court. The court assessed her punishment at 12 years in the Oklahoma State Penitentiary and this appeal was duly perfected.

There are three basic assignments of error on appeal as follows:

1. The evidence fails to sustain the crime charged in the amended information.

2. Errors in admission and rejection of evidence and other rulings and remarks of the trial court and arguments of counsel for the state which prevented the defendant from having a fair and impartial trial.

3. Misconduct of the jury and the prosecutor.

The last assignment of error, as will be hereinafter discussed, must be sustained. Therefore the errors urged in the other

propositions will not be dealt with at length but we will comment thereon to provide a guide in the retrial of the cause.

Under the first assignment of error counsel for the defendant asserts that the "taking" as revealed by the testimony and evidence adduced was not a taking from the immediate presence of the victim, as is required by our robbery statute, Title 21 section 791. The undisputed facts were that the money alleged to have been taken by the robber was in a car which was parked outside the Food Store. The victim was an employee of said store and was in the process of collecting the prior day's receipts from all 7–11 Food Stores in Oklahoma City, to be deposited in a bank. He had picked up the money from the store on Dorchester and placed it in a sack along with other money collected from other stores in the City. He had gone to his car which was parked immediately outside the store but had returned into the store for a purpose not here material. He left the money in the car and while he was in the store the robber came in and required the victim and all other persons in the store to enter a refrigeration vault in the store and the robbery took place. He was forced to disclose that the sack of money was in the car parked outside and while locked in the vault the money was taken from the car by the robber. The defendant asserts that since the victim was in the vault it was impossible to see the car from which the money was taken and therefore it was not taken from the immediate presence of the victim. With this line of reasoning we cannot agree. Although this particular question apparently has never been before this court it is not a new or novel question of law. The robbery statutes of those jurisdictions in which the question has been raised are of the same import as our statute. Only the working varies from state to state. "The meaning of the statutes, as expressed in the language, is that the property must be so in the possession or under the control of the individual robbed that violence or putting in fear was the means used whereby the robber took it." 46 Am.

Jur. 142, Robbery § 7. For example when the subject matter of the robbery was located in another room of the house, as in State v. Calhoun, 72 Iowa 432, 34 N.W. 194, or in another building on the premises, as in Clements v. State, 84 Ga. 660, 11 S.E. 505, it was held to be a robbery within the meaning of the statute. We feel that the reasoning used in those cases applies to the factual situation in the case at bar. To hold otherwise would require our Legislature to word and design our laws so as to cover every conceivable factual situation which obviously would be an unsurmountable task. For cases of like import see People v. Covelesky, 217 Mich. 90, 185 N.W. 770, and State v. Cottone, 52 N.J.Super. 316, 145 A.2d 509.

Turning to the second proposition of error relating to the admission and exclusion of evidence and other rulings of the trial court we must observe initially that if counsel bases error upon alleged mistakes or errors made during the course of the trial, proper objections must be interposed and preserved in the record before it will be the basis of reversal in instances where no fundamental right of the defendant has been violated. Also, we cite the frequently announced rule by this court that evidence of separate and similar offenses is admissible when it is material and proper to show (1) Motive, (2) Intent, (3) Absence of mistake or accident, (4) Identity of the person charged with the commission of the crime for which an accused is put on trial, and (5) Common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other. It is necessary when the above rule is applicable to limit and instruct the jury as to the purpose of allowing such evidence and one desiring such instruction should submit requested instructions to the trial court in this connection.

This then leads us to the determinative proposition in this case. A brief résumé of the events that transpired in connection with this proposition as reflected in the case-made is necessary. After all the

evidence on behalf of both parties was presented the following took place:

"The Court: Ladies and gentlemen of the jury, it will take just a few minutes to draw up the instructions in this case. And during that period of time, feel free to go down to the refreshment stand, if you want to, but remember the admonitions of the Court about discussing this case. And we will notify you when to come back. After you finish downstairs, if you will stay in this general area, we will let you know when to come back.

"(Thereupon, jury retires from the jury box.)

"(The following proceedings were had at the bench:)

"Mr. Pitman: Comes now the defendant, by and through her counsel, Val Pitman, and moves for a mistrial at this time, for the reason that Juror Ray McMahon came down from the jury box out of the presence of the Court, discussed the drawing or the location of the air hose with the County Attorney, Charles Gregory, and that Mr. Gregory answered his questions as to where the—his question was, 'Where was the air hose located or supposed to show on the drawing.' And Mr. Gregory answered him that they didn't show on the drawing. And did not, the other conversation had was not heard between the witness and counsel. And we move for a mistrial at this time.

"Mr. Gregory: In order to keep the record straight, Mr. Reporter, let the record show that that was the extent of the conversation, as recounted by counsel, generally; that the juror loked at the exhibit and stated something to the effect that they didn't show the air hose on said exhibit, which is obvious from looking at said exhibit; and that the County Attorney replied in the affirmative that said air hose was not shown, which was brought out in the testimony of said witness, Tommy Thomas.

"The Court: The objection will be overruled, exception allowed.

"Mr. Pitman: We renew all of our demurrers and motions and objections heretofore made.

"The Court: It will be overruled, exception allowed. Counsel for the defendant urges that 'from the record there is no other conclusion to be drawn but that the juror not only wilfully permitted but actively solicited communication to be made to him by the prosecutor, but, apparently wilfully received the information he sought, which concerned defendant's exhibit "A" and the location of one of the most critical focal points involved in the trial, i. e. the location of the air hose. That is the point from which the state's eye witness, Mrs. Rebecca Hewitt, purportedly viewed the scene of the robbery. The underlying purpose for which the juror inquired about the location of the air hose could have been only his interest in whether or not Mrs. Hewitt could have viewed what she testified she saw, and this was a matter of proper concern for the juror for the reason that Mrs. Hewitt's memory had failed her since the trial on some matters and for the further reason that her own testimony described a position from which it must have been difficuly to be too observant.' "

█ In the absence of sworn testimony relating the entire conversation between the juror and attorney we will not speculate as to the motive of the juror in engaging in the conversation, the text of the conversation or the effect it had upon the verdict of the jury. We believe that the statements of counsel as set forth in the case-made clearly establish a violation of 22 O.S. (1951) 854, as will be discussed at length later in this opinion.

█ Under the Oklahoma Constitution, Article 2, Section 20, Rights of accused in criminal cases, and the cases decided by this Court thereunder, every citizen charged with a criminal offense is entitled to a public trial by an impartial jury whether guilty or innocent, according to the due and orderly course of the law, and it is the duty of courts to see that the guaranty of such a trial is upheld. Our Legislature has wisely enacted certain provisions to implement and safeguard the right to a fair and impartial jury trial. Also, there are many cases relating to the right to and determina-

tion of the encroachment of this right. There are three different and distinct occasions wherein the right has varying aspects. A discussion of all three will, we hope, provide a better understanding of the right as it exists under our law.

■ The first aspect is exemplified by the case of Townley v. State, Okl.Cr., 355 P.2d 420. In that case two members of the jury were seen during recess, in the hall immediately outside the court chambers, briefly speaking with an attorney interested in civil aspects of the criminal trial, before final submission to the jury. This court held that in the absence of testimony that the occurrence was more than casual, it did not constitute prima facie misconduct of the jury so as to require reversal unless it be shown that the defendant was prejudiced thereby. Therefore, under this decision the burden is upon the defendant to show prejudice when the factual situation is the same, to wit: a communication by a member of the jury with a third party not interested in the outcome of the trial.

The second aspect will be dealt with last as it is the one involved in the case at bar.

■■ The third aspect is exemplified by 22 O.S. (1951) § 857, which provides:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

It should be noted that after the case has been submitted to the jury for their determination, any unauthorized communication of an officer or official of the court or any third person creates a presumption of prejudice against the defendant and this presumption· must be overcome by the state.

See Lowrey v. State, 87 Okl.Cr. 313, 197 P. 2d 637, and cases cited therein. There are many decisions in this area and we will not attempt to review them in this opinion.

The second and crucial aspect involved in this case is the situation wherein a conversation was had between a juror and an official of the court, an occurrence which was more than casual. It was an act of misconduct on the part of both the juror and the prosecutor. Title 22, section 854, provides that the court must admonish the jury at each adjournment of the court, whether permitted to separate or kept in charge of officers, that *it is their duty not to converse among themselves or with anyone else on any subject connected with the trial,* or to form or express any opinion thereon, until the case is finally submitted to them. Title 21, section 385(2), makes it a misdemeanor for any juror to wilfully permit any communication to be made to him, or to receive any information relative to any cause pending before him, except according to the regular course of proceeding upon the trial of such cause * * * It therefore is clear that the legislature intended to uphold the sanctity and purity of the right to a jury trial and we believe that these two sections of our statutes make it clear that there was misconduct in the case at bar of such a nature so as to create a presumption of prejudice against the defendant.

Furthermore, canon twenty-three of the canons of ethics for the legal profession provides in part:

"A lawyer must never converse privately with jurors about the case; and both before and during the trial he should avoid communicating with them, even as to matters foreign to the cause."

We feel that the proper procedure to follow when a juror attempts to converse with any attorney, judge, other official of the court or any other person, is to merely state to the juror that he is not allowed to discuss the case at all. Any other reply, whether it be a mere shaking of the head

in the affirmative or negative or some other manner of communicating may encroach upon the defendant's rights to a fair trial. Also, we suggest that at the outset of the preliminary instructions or briefing of the jury panel it should be made clear that our statutes impose a penalty for a violation of the oath taken as a juror. 21 O.S. (1951) § 385.

We do not intend to say that in the case at bar the misconduct of the juror was grounds for a mistrial if properly explained, or that no further proceedings should be had. There was an opportunity for the matter to be cleared up when the motion for new trial was heard. The juror should have been subpoenaed and questioned on motion for new trial as to all that was said in the conversation. Under such circumstances this court would have before it all of the conversation as related by the juror under oath and the defendant would have been given an opportunity as would the state, to show whether or not the conversation was prejudicial.

For a case where in it was argued that there was misconduct of the jury before the case had been finally submitted to them see Tapedo v. State, 34 Okl.Cr. 165, 245 P. 897. There the juror testified that the statement between himself and interpreter did not affect him and that he decided on the sworn testimony. With this part of the case we agree. However, the court went on to say

that before the final submission of the case to the jury, the burden to show prejudice from alleged misconduct is on the defendant. We do not think that that should be the rule when the misconduct was between a juror and an officer of the court. Since the state participated in the misconduct the context of the conversation is within the knowledge of the state and they should be called upon to show its nonprejudicial effect. We think that it is sufficient for the defendant to show the misconduct and once this is shown it automatically shifts the burden upon the state to show nonprejudice by competent evidence. Insofar as the Tapedo case is inconsistent with this view it is expressly overruled.

In conclusion I cannot ignore the language in the dissent in Keahbone v. State, Okl.Cr., 318 P.2d 894, 897, by my worthy colleague and take the liberty to quote therefrom. "One of the great elements that distinguishes us from enemies of the democratic form of government is trial by jury. It not only must always be preserved but rigid enforcement must be exemplified in maintaining its cloak of purity. * * * Its cloak of purity must at all times be kept clean."

Therefore, for the reasons stated herein this cause is reversed and remanded for a new trial.

NIX, P. J., and BRETT, J., concur.