Kenneth John CODY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. 13166.

Court of Criminal Appeals of Oklahoma.

Nov. 7, 1962.

Rehearing Denied Dec. 19, 1962.

See also 361 P.2d 1109.

Albert Hoch and Cargill, Cargill & Chiaf, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., James H. Harrod, County Atty., Oklahoma County, Earl Mills, Asst. County Atty., for defendant in error.

BUSSEY, Judge.

This appeal was perfected by Kenneth John Cody, defendant below, from a judg- ment and sentence rendered against him in the District Court of Oklahoma County, Case # 26106, fixing his punishment at 99 years in the State Penitentiary at McAlester for the Crime of Rape in the First Degree.

Kenneth John Cody was originally charged by information as an "aider and abetter" of one Elmore (PeeWee) McKelly in the rape of Imogene Cody, defendant's wife. He was tried by a jury, convicted and sentenced in accordance with the verdict of the jury. On the 5th day of April, 1961, this Court rendered an opinion in Cody v. State, Okl.Cr., 361 P.2d 307, 84 A.L.R.2d, and the case was reversed and remanded for a new trial for the reasons therein expressed.

There are numerous assignments of error urged on appeal; but, we will discuss in this opinion only those which contain some merit and were not decided adversely to defendant in Cody v. State, Supra.

On the 17th day of May, 1961, the County Attorney of Oklahoma County filed an amended information setting forth the following allegations:

"* * * [that] on the 10th day of September A.D., 1959, in Oklahoma County, State of Oklahoma, KENNETH JOHN CODY whose more full and correct name is to your informant unknown, then and there being, did then and there wilfully, unlawfully and feloniously commit the crime of RAPE IN THE FIRST DEGREE in the manner and form as follows, to-wit:

"That is to say, the said defendant, acting conjointly and together and in collusion with Elmore McKelly, in the county and state aforesaid, and on the day and year aforesaid, then and there being, did then and there wilfully, unlawfully, wrongfully and feloniously, and by means of force overcoming the resistance and by means of threats of immediate injury and great bodily harm, accompanied by apparent power of execution, and preventing resistance by then and there holding one IMOGENE CODY, accomplish an act of

sexual intercourse by the said defendant, ELMORE McKELLY, with the said IMOGENE CODY, female of the age of thirty-three years, being the wife of the said defendant, KENNETH JOHN CODY, who acted in collusion with the said defendant, ELMORE McKELLY, to accomplish the act of sexual intercourse, and the said defendant, and the said ELMORE McKELLY, both being male persons over the age of eighteen years, said act of sexual intercourse being accomplished by the defendant and the said ELMORE McKELLY, after having by force and fear overcome the resistance of the said IMOGENE CODY and without her consent and against her will; contrary to the form of the statutes in such cases made and provided and against the peace of the dignity of the State of Oklahoma."

To such amended information the defendant interposed a demurrer and requested that the trial court grant a preliminary hearing on the amended charge. The demurrer was overruled and the requests denied, and proper exceptions taken to the ruling of the court.

■ It is the defendant's first contention that the amended information fails to charge the defendant with any crime under the laws of the State of Oklahoma. With this contention, we cannot agree. Title 21, O.S.A. § 1111 provides:

"Rape is an act of sexual intercourse accomplished with a female, not the wife of the perpetrator, under either of the following circumstances:

\* \* \* \* \* \*

"4th. Where she resists but her resistance is overcome by force and violence.

"5th. Where she is prevented from resistance by threats of immediate and great bodily harm, accompanied by apparent power of execution.

\* \* \* \* \* \*

"8th. Where she submits under the belief that the person committing the act is her husband, and this belief is induced by artifice, pretence or concealment practiced by the accused, or by the accused in collusion with her husband with intent to induce such belief. And in all cases of collusion between the accused and the husband of the female, to accomplish such act, both the husband and the accused shall be deemed guilty of rape."

From the examination of the amended information as above set forth, it is abundantly clear that it alleges: (1) that on the 10th day of September, 1959, the defendant, Kenneth John Cody, acting in collusion with one Elmore (PeeWee) McKelly (2) by use of force overcoming the resistance of Imogene Cody, the wife of defendant, (3) did force the said Imogene Cody to have sexual relations with Elmore (PeeWee) McKelly against her will.

■■ It is next contended by the defendant that the court erred in denying the defendant's request for preliminary hearing under the amended information. Defendant argues that when the allegations were changed from "aiding and abetting" to "acting in collusion" this constituted an amendment not only in form, but in substance, and that the defendant could not adequately prepare the defense.

Title 22 O.S.A. § 304 provides:

"An information may be amended in matter of substance or form at any time before the defendant pleads, without leave, and may be amended after plea on order of the court where the same can be done without material prejudice to the right of the defendant; no amendment shall cause any delay of the trial, unless for good cause shown by affidavit."

In construing Title 22 O.S.A. § 304, Supra, in Raybourn v. State, Okl.Cr., 339 P.2d 539, this Court stated:

"1. An information may be amended in matters of either form or substance when it can be done without prejudice to the substantial rights of the accused.

"2. Where an information charging a felony is amended, and the charge in the amended information is substantially the same as the charge in the preliminary complaint before the committing magistrate, the contention that accused should have a right to preliminary hearing on the amended information is untenable."

■ We observe at the outset: (1) That the defendant under the original information was charged as "aiding and abetting" Elmore (PeeWee) McKelly in the rape of Imogene Cody, and that the punishment for such act carried a minimum of 15 years and a maximum of life imprisonment or death. (2) That the defendant under the amended information is charged with "acting in collusion" with Elmore (PeeWee) McKelly in the rape of Imogene Cody, and that the punishment therefor is a minimum sentence of 15 years in the State Penitentiary and a maximum of life imprisonment or death. (3) Substantially, the same evidence relied upon to convict the defendant under the information first filed was introduced and is relied upon to support the conviction under the amended information. (4) The defendant interposed the identical defense under each information and (5) The defendant was thoroughly familiar with the evidence relied on by the state to support the amended information prior to proceeding to trial thereunder.

Under these circumstances, we are of the opinion that the defendant was not prejudiced by the filing of the amended information, or by the court's refusal to grant a preliminary hearing on the same.

■ It is next contended by the defendant that the County Attorney committed reversible error when during the course of the trial, Elmore (PeeWee) McKelly was brought into the court room; where, over the objection of defense counsel, Mrs. Imogene Cody was allowed to identify McKelly as the man who sexually assaulted her on the evening of September 10, 1959. The defendant urges that the actions of the County Attorney, as above set forth, violated Title 22 O.S.A. § 838, which provides:

"When two or more defendants are jointly prosecuted for a felony, any defendant requiring it must be tried separately. In other cases defendants jointly prosecuted may be tried separately or jointly, in the discretion of the court."

It is conceded by the defendant that had McKelly been called as a witness for the prosecution, as was done in the previous trial, the same would not have constituted a violation of the statute above cited.

While this question has never arisen in Oklahoma before, we are of the opinion that the decision in State v. Ruck, 194 Mo. 416, 92 S.W. 706 is applicable here. In State v. Ruck, Supra, the Court said:

"It is not error for the court to require defendant's accomplices in the deadly assault to be brought into court to see if the assaulted person can identify them."

In the case at bar, McKelly was not on trial, but a severance had been granted. The question of whether prosecutrix was able to identify McKelly was an integral part of the state's case in chief, and we believe that it was proper for her to identify him in the court room as her assailant. We are therefore of the opinion that this assignment or error is without merit.

■ It is next contended that certain photographs introduced into evidence on behalf of the state, showing bruises and burns on the body of the prosecutrix, were not properly identified.

The record, however, does not support this contention since the testimony of Dr. L. D. Threlkeld, appearing at Pages 300–315 of the case-made, discloses that:

"Q. (By the State): Doctor, were you present when some photographs were taken of Mrs. Cody?

"A. Yes sir; the next day.

"Q. Doctor, I will hand you what has been marked the State's Exhibits 5, 6, 7 and 8, and ask you to examine those and tell the court and jury if

those photographs were taken in your presence?

"A. Yes sir: these are the photographs.

"Q. On what date were they taken?

"A. The day after I examined her. It would have been September 12th.

"Q. Would you know about what time of day it was?

"A. It was in the morning. The exact hour I don't know.

"Q. Before noon?

"A. It was before noon.

"Q. Doctor, do these photographs that I have enumerated and handed to you, do they accurately portray the bruises and contusions upon the body of Imogene Cody to which you have just testified?

"A. I would say they do."

(Photographs then offered into evidence by the State)

It is next argued by the defendant that the county attorney committed reversible error in his closing argument to the jury.

 From the record before us, it is impossible to determine whether or not the remarks of the county attorney, now complained of, were invited or provoked by the closing argument of counsel for defense; and, we will not speculate that they were not. The trial court, in an effort to grant the defendant every benefit of the doubt in his presentation of his defense, granted wide latitude to the defendant in admitting incompetent evidence over the objection of the state. Much of this evidence could have formed the foundation for the closing argument of counsel for defense, which is not reported in the record. Under these circumstances, we follow the rule in Grimes v. State, Okl.Cr., 365 P.2d 739:

" 'Ordinarily error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks

and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel.' "

Applying the rule above set forth, we are of the opinion that this assignment of error is without merit.

As a further ground for reversal, the defendant urges that he was prejudiced in his substantial rights by virtue of the jury having read of the prior conviction of the accused and his sentence of 99 years given thereunder, and that the conviction was reversed by this Court.

From the record, it appears that after the jury returned the verdict to the court room, two of the jurors, when asked by counsel for defense, acknowledged that they had read a newspaper article concerning the case at bar after they had been selected as jurors, but, prior to the time the case was submitted to the jury.

Other members of the jury acknowledged that they became aware of the prior sentence and reversal either before they were selected as jurors, or during the course of trial.

The defendant introduced into the record the following article, which was never identified as having been read by any of the jurors:

"Oklahoma City Times
Monday, June 12, 1961

"PROSECUTOR
SEEKS DEATH

"The prosecution will seek the death penalty for Kenneth John Cody, charged with rape by forcing his wife to submit to another man.

"William N. Mounger, assistant county attorney, announced his intention to try Cody for the electric chair as jury selection began Monday morning before District Judge Glen O. Morris.

"CONVICTION REVERSED

"Cody, whose 99-year conviction for the alleged offense was reversed re-

cently by the court of criminal appeals, spent the morning at a counsel table less than 6 feet from his wife, Imogene.

"It was she who brought the original charges, accusing Cody of beating and mistreating her during an all-night ordeal which ended in her rape by a Negro man, Elmore McKelly, Sept. 10, 1959.

"Cody's first trial ended in the 99-year sentence. This was reversed primarily because more than one alleged attack by McKelly was introduced during the trial.

"In writing the reversal opinion, Hez J. Bussey, judge on the appeals court, said a conviction must be based on a single offense. He noted that only eight similar rape cases can be found in legal history.

"Cody, clad in a dark suit, showed no reaction to sharp clashes between attorneys as jury selection got under way. His craggy. face, however, mirrored keen interest.

### "DIDN'T LOOK AT CODY

"Mrs. Cody, wearing a pastel striped summer dress, kept her eyes downcast. She did not look at Cody or at the jurors.

"In a pre-trial conference, Mounger told Judge Morris he expected the hearing to take 2½ days. The first trial required four."

The defendant did not call the jurors as witnesses and question them as to what effect their knowledge of the prior conviction, sentence and reversal may have had in influencing their verdict, either at the time he moved for a mistrial, or when defendant's motion for a new trial was argued before the trial court.

█ We believe the rule set forth in Tapedo v. State, 34 Okl.Cr. 165, 245 P. 897, is particularly applicable here. In the Tapedo Case, Supra, this Court said:

"In a capital case where misconduct of the jury is alleged, if the misconduct occurred before the case is finally submitted to the jury, the burden is on the defendant to show that the alleged misconduct was prejudicial to him."

Moreover, the record discloses that during the trial proceedings repeated reference was made to the previous trial by counsel for defense, and in the closing argument the following reference to defendant's previous conviction and reversal by this Court is found: (CM 577)

"MOUNGER (For the State):

"It is the same old story over and over, and he (referring to defense counsel) cast that insinuation by *his* argument, that the Court of Criminal Appeals found something wrong. He knows and I know that they reversed it on a point of law and not on evidence. (Italics ours)

"CARGILL (For the Defense):

"They reversed it and sent it back for a new trial."

█ It thus appears that counsel for defense called to the attention of the jury that which he now complains of as error prejudicial to the accused. His position is not made less untenable by the jury fixing the punishment at 99 years, the same sentence imposed on the previous trial. For it is as logical to assume that the present verdict might have been modified from death to 99 years by virtue of the jurors' knowledge of the previous sentence imposed, as it is to assume that the defendant's punishment was enhanced by such knowledge.

█ It· is lastly contended by the defendant that the court erred in its instructions to the jury. We have carefully examined the instructions, and are of the opinion:

"Instructions must be considered as whole, and when considered altogether, if they fairly and correctly state the law applicable to case, they will be sufficient." Buie v. State, Okl.Cr., 368 P.2d 663.

■ While not contained in the brief of defendant, it was argued by defense counsel that the punishment imposed was excessive.

To this argument, we need only observe that the record overwhelmingly supports the guilt of the accused in one of the most perverted, degrading and animalistic cases ever called to the attention of this writer, and that the jury would have been justified in assessing the death penalty.

For the reasons above set forth, the judgment and sentence appealed from is affirmed.

NIX, P. J., and BRETT, J., concur.