Robert J. MULLER, Sr., and Frank Muller, Plaintiffs in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–14351.

Court of Criminal Appeals of Oklahoma.

Feb. 26, 1969.

Rehearing Denied June 25, 1969.

Second Rehearing Denied July 15, 1969.

Frank Grayson and Jack L. Spivey, Oklahoma City, for plaintiffs in error.

G. T. Blankenship, Atty. Gen., Dale F. Crowder, Asst. Atty. Gen., for defendant in error.

BUSSEY, Judge.

Robert J. Muller, Sr. and Frank Muller, hereinafter referred to as defendants, were jointly charged with the offense of Embezzlement by Trustee. They were tried by a jury who found them guilty and left the punishment to be fixed by the court. The trial court fixed the punishment at five years imprisonment in the State Penitentiary and a timely appeal has been perfected to this Court.

On appeal the defendant argues that "the trial court erred in overruling defendant's motion for a mistrial based on a conversation which had taken place between the complaining witness, Jack Trout, with two members of the jury at a time after both sides had rested their case and prior to summation by the attorneys and during the time when the jury was taking a recess."

Page 181 of the case made reveals the following:.

"(Whereupon, a recess was taken, after which time, parties and counsel present as heretofore noted, the Jury in the Box, the following further proceedings were had:)

MR. ALLEN: Your Honor, would it be possible for us to confer with the Court in Chambers?

THE COURT: Yes.

(Following further proceedings had in Chambers out of presence and hearing of the Jury.)

MR. ALLEN: During the last recess it was brought to Mr. Hale's attention and my attention that Mr. Jack Trout, one of the witnesses, spoke to one of the Jurors and it was my understanding that it was the Juror in the first row on the far end. We advised Mr. Cunningham and Mr. McKinney of this. We were not apprised of it until after the Court recessed and at this time we would like to move for a mistrial.

THE COURT: What did you say to him, Mr. Trout?

MR. TROUT: I was standing there at the door of the Jury Room as he came or started in there and he said, 'I used to live at Borger.' And I said, 'Oh.' And he said said, 'Yes, about 1935.' He said, 'I worked at one of the Carbin Black plants there.' And I said, 'We don't have many of those left there.' And I said, 'My Dad was there about 1925 and it's quite a different town now than it was in those days.' And that was the extent of the conversation.

THE COURT: He didn't say any more to you and you didn't say any more to him?

MR. TROUT: No, sir.

THE COURT: You didn't discuss this case in any way, shape, form or fashion?

MR. TROUT: Not in any way.

THE COURT: The motion for mistrial will be overruled. Do you have anything else?

MR. ALLEN: If the Court please, I think that—if the Court thinks that's proper, that after the matter is submitted

to the Jury and they come back, I wonder if we could call the Juror at that time?

THE COURT: I will take that request under advisement."

The record then shows that it was stated by counsel and the court that if a verdict of guilty is returned the juror involved could be called at that time. Thereupon, Mr. Allen advised the court that Mr. Trout stated that some of the other jurors spoke to him on the elevator some time prior thereto. At case made 183, the following appears:

"MR. TROUT: There was no conversation involved other than—I don't remember the lady standing behind me on the elevator, but she asked me what size town Borger was or she would guess it was a pretty good sized town and I said it was about 25,000 population."

Thereafter, the attorneys presented their oral argument to the jury and after the jury had returned its verdict of guilty and left the punishment to be fixed by the Court and the Court had discharged the jury in this cause, the following proceedings occurred at page 187 of the case made:

"I would like to see Mrs. Collier and Mr. Standridge for a moment, please.

It's my understanding that Mr. Trout was seen talking to Mrs. Collier and Mr. Standridge, is that correct, Mr. Allen?

MR. ALLEN: Yes, sir.

THE COURT: Mrs. Collier, did you have a conversation with the complaining witness, Mr. Jack Trout?

MRS. COLLIER: I merely spoke to him.

THE COURT: Was that in the elevator?

MRS. COLLIER: Yes, sir. I asked him if Borger was a big town like all the other towns that we are getting because I was in highschool—well, we went through Borger one time.

THE COURT: I see.

Mr. Allen, do you have any further record that you want to make with any pos-

sible reference to any possible conversation with the complaining witness as concerns Mrs. Collier?

MR. ALLEN: No, sir.

THE COURT: Again, as I said to the other Jurors, thank you very much for your service on this Jury and do come back to see us.

MRS. COLLIER: I'm sorry about the misunderstanding.

THE COURT: That is all right.

Mr. Standridge, apparently you said something on Mr. Trout said something to you, is that correct?

MR. STANDRIDGE: Yes, sir.

THE COURT: What was that conversation?

MR. STANDRIDGE: I used to live in Borger, Texas, and I merely asked him if the town was anything like it used to be.

THE COURT: I see. Is there any further record that you would like to make, Mr. Allen, with reference to Mr. Standridge?

MR. ALLEN: Could you recall that conversation that you had with him, Mr. Standridge?

MR. STANDRIDGE: I said to Mr. Trout that I lived in Borger, Texas from the early part of '30 to '35 and worked there and asked him if the town was anything like it used to be and he said, 'No, you wouldn't know it.' That was about the extent of the conversation.

MR. ALLEN: We have no further questions.

\*     \*     \*     \*     \*     \*

The Court is of the opinion for the record that the conversation between Mr. Standridge and Mrs. Collier and Mr. Trout were very natural and normal conversations that dealt only with the fact that Mr. Trout had come from Borger, Texas, and in no way influenced the verdict in this case and is there anything else that you would like to say for the record, Mr. Allen?

MR. ALLEN: Not at this time, Your Honor. Of course we move again for a mistrial.

THE COURT: The motion for mistrial will be overruled in view of the evidence."

■ We are of the opinion that the rule announced in Tapedo v. State, 34 Okl. Cr. 165, 245 P. 897, is determinative of the issue here presented. In Tapedo v. State, supra, this Court, speaking through the Honorable Judge Edwards, stated:

"In a capital case where misconduct of the jury is alleged, if the misconduct occurred before the case is finally submitted to the jury, the burden is on the defendant to show that the alleged misconduct was prejudicial to him. Where the alleged misconduct occurs after the case is finally submitted to the jury, prejudice is presumed, and the burden is on the state to show that no injury could have resulted therefrom to the defendant."

This decision was modified insofar as it was inconsistent with our holding in Fields v. State, Okl.Cr., 364 P.2d 723, wherein we stated:

"We do not think that that should be the rule when the misconduct was between a juror and an officer of the court. Since the state participated in the misconduct the context of the conversation is within the knowledge of the state and they should be called upon to show its nonprejudicial effect. We think that it is sufficient for the defendant to show the misconduct and once this is shown it automatically shifts the burden upon the state to show nonprejudice by competent evidence."

In the *Fields* case the misconduct was between the Assistant County Attorney and a juror, and thus knowledge of the conversation was imputed to the State. The exception to *Tapedo* has no application in the instant case where the conversations were between two members of the jury and a witness for the State. Moreover, in light of the record, it does not appear that these conversations related in any way to the matter on trial.

■ As his second part of this assignment of error, the defendant urges that it was error not to swear the witness and the two jurors prior to receiving their testimony relating to the alleged conversations. Since the burden of proof under *Tapedo* rested on the defendant, this failure to swear the witnesses and juror, or to request that they be sworn, was an omission on the part of the defendant. Moreover, the general rule in 98 C.J.S. Witnesses § 320 e., provides in relevent part:

"Both in civil and in criminal trials, and in administrative hearings conducted without traditional court ritual, the right to object to the failure to have a witness properly sworn may be waived by failing to object in time or by express consent."

Accordingly, we are of the opinion that this assignment of error is without merit.

■ As his last assignment of error, defendant urges that the punishment of five years assessed by the trial court is excessive. With this contention we cannot agree, for as was said in McCluskey v. State, Okl.Cr., 372 P.2d 623, and cases cited therein:

" * * *. However, we will only modify a judgment in furtherance of justice. We do not have the power to modify a sentence unless we can conscientiously say that under all facts and circumstances the sentence is so excessive as to shock the conscience of the Court."

For all of the reasons above set forth we are of the opinion that the judgment and sentence appealed from should be, and the same is hereby, affirmed.

BRETT, P. J., and NIX, J., concur.