Elmer MERRIMAN, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–16506.

Court of Criminal Appeals of Oklahoma.

May 10, 1972.

Rehearing Denied Aug. 8, 1972.

Sandlin & Daugherty, Holdenville, and Buck Cartwright, Wewoka, for appellant.

Larry Derryberry, Atty. Gen., Fred Anderson, Asst. Atty. Gen., for appellee.

BRETT, Judge:

Appellant, Elmer Merriman, hereinafter referred to as defendant, was charged in the District Court of Seminole County, Case No. 70-39, with the crime of murder. He was found guilty by jury verdict of the lesser included offense of manslaughter in the first degree with punishment fixed at four (4) years imprisonment. Judgment and sentence in accord with the jury verdict was imposed on September 28, 1970, and this appeal perfected therefrom.

It was charged that on August 27, 1966, the defendant did "shoot and discharge a leaden bullet" with a pistol into E. O. Marshall, causing his death. The evidence established that on August 27, 1966, at approximately 7:00 p. m., E. O. Marshall, the deceased, came to the home of Joan Whitlock looking for her husband, Charley Franklin Whitlock. While Marshall was there the defendant arrived and also asked as to the whereabouts of Mr. Whitlock. According to Mrs. Whitlock, the defendant turned to Marshall and asked, "Where was that red dog that he [Marshall] hauled off from his [defendant's] house yesterday?" Marshall replied, "Who? Me? You must be mistaken. You must have me mixed up with someone else." Mrs. Whitlock further testified that Marshall asked defendant who he was. As defendant started to leave, according to Mrs. Whitlock, defendant told Marshall he would meet him down at the corner. As defendant left, Marshall again asked Mrs. Whitlock who defendant was and then stated to

her that he, Marshall, "was gonna go find out what it was all about." A while after both men had left, Mrs. Whitlock heard what she thought to be firecrackers. After the first sound there was a pause and then she heard two or three more. When her husband, Mr. Whitlock, arrived at approximately 7:30, Mrs. Whitlock related the events to him. Mr. Whitlock on his way home had observed Marshall's panelled wagon down by the corner and returned to it to see what had taken place. Mr. Whitlock found the body of Marshall lying in a bar-ditch beside the panelled truck. No one else was present at the scene. After finding Mr. Marshall's body, Mr. Whitlock phoned the Sheriff's office. A rifle was found under Marshall's body.

Sheriff Nicholson testified that he was phoned by Mrs. Whitlock about the shooting near her residence and also received a call from Mrs. Heard who stated that her uncle, the defendant, had been shot and was at her house. Sheriff Nicholson notified his deputy, Mr. Arnold, who was instructed to go to the Heard residence. Sheriff Nicholson proceeded directly to the Whitlock residence.

When Deputy Sheriff Arnold arrived at the Heard residence a woman met him out front and directed him around back of the house. In the back yard the deputy found the defendant. Deputy Arnold asked the defendant "what was going on." To which, the defendant replied "that E. O. Marshall had shot him and that he in turn had shot E. O. Marshall." The defendant then gave the Deputy a .25 automatic pistol. The defendant told the Deputy he did not know if Marshall was dead and also advised the Deputy it had happened by the Whitlock residence. The Deputy took the defendant to the scene of the shooting and later to the hospital for emergency treatment of defendant's injuries which included a gunshot wound in the finger and an eye injury.

Defendant testified that on August 27, 1966, he had gone to the Whitlock's residence to look for Mr. Whitlock. Defendant had some trouble with his dogs, some having been poisoned. At the Whitlock's, defendant asked Marshall about a little red dog. According to defendant, Marshall got angry and began cursing him. After leaving the Whitlock's house, Marshall's car overcame him. As defendant pulled over to let Marshall pass, Marshall jumped out and opened defendant's door and began to hit defendant. Defendant kicked Marshall away, picked up his gun, and got out of his car. After alighting from his pickup, defendant and Marshall got into a fight during which defendant lost his glasses. Defendant testified that Marshall said "I'll kill you." According to the defendant, the deceased reached into his pickup and pulled out a .22 caliber rifle. They struggled for the rifle and it discharged, hitting the defendant in the right eye. Fearing that Marshall would shoot him again, the defendant fired at Marshall. Defendant then got into his pickup and drove to the Heard residence, which was about a mile and a quarter away. The officers testified as to the signs of a struggle at the scene.

■ It is defendant's first contention that it was error for the trial court to overrule defendant's motion for a directed verdict. Defendant argues that the evidence establishes nothing more than justifiable homicide. We cannot accept defendant's contention as it is apparent that the evidence was more than sufficient to go to the jury for determination of the fact issues raised. Even though one view of the evidence might support a determination of justifiable homicide, this was a question for the jury to determine. We have often said that "it is for the jury to determine—under all the evidence and proper instructions from the court—whether appearances of danger were real, or apparently real, so as to justify action in self-defense." Harris v. State, Okl.Cr., 448 P.2d 296. It is a familiar rule that "where there is a conflict in the testimony it is the exclusive province of the jury to weigh the evidence and ferret out the truth and if there is competent evidence to support their findings this Court will not disturb the verdict

on appeal." Goodnight v. State, Okl.Cr., 366 P.2d 957. We conclude that the trial court did not err in overruling defendant's motion for a directed verdict.

█ It is defendant's second contention that the trial court gave improper instructions which were "confusing to the jury and prejudicial" to the defendant. The first of these challenged instructions, Number Ten, defendant claims, implied to the jury that unless the prosecution proved justification, the manslaughter "should be punished regardless of the justification or mitigation established by the defendant." We cannot agree that the instruction either implied or stated such a result. Instruction Number Ten stated in essence that once the homicide was proven, the burden of proving mitigation that would justify or excuse the homicide devolves upon the defendant unless such is established by the prosecution's proof. This instruction is a verbatim quotation of Title 22 O.S.1971, § 745. The trial court accurately stated the law, and the facts in the case warranted this instruction. Consequently, there was no error in this regard.

█ The next challenged instruction, Number Seventeen, the "aggressor" instruction, advised in substance that inflammatory remarks or insulting words do not constitute the provocation of, or justify, an assault. Defendant argues that this instruction was improper since there was no issue in the case concerning this particular point. We disagree. The evidence, both direct and circumstantial, warranted the giving of this instruction.

█ Next defendant challenges Instruction Number Twenty-two which advised the jury that the punishment upon conviction of murder was death or imprisonment for life. Defendant argues that the jury was "not qualified for the death penalty," thus stressing "a most heinous capital offense" and punishment which "should not have been before them." Again we must disagree. The trial court properly and accurately instructed the jury as to the punishment upon conviction for murder, and

the issue of murder was properly before the jury. Murder is a most heinous capital offense. The fact that the prosecuting attorney announced prior to seating the jury that he would not seek the death penalty does not alter the statutory provision provided upon conviction for murder. Title 21 O.S.1971, § 707. It would have been inaccurate and improper for the trial court to instruct that upon conviction of murder the maximum punishment would be life imprisonment.

█ Defendant next challenges Instruction Number Eighteen because it refers to a "leaden" bullet. Defendant argues that the evidence established that the defendant's weapon fired a "copper-jacket or 'steel' bullet" and that defendant's theory was to the effect that the deceased shot defendant with a lead bullet. So defendant could not have caused his injury by his own gun. This instruction advised the jury that "if you shall find and believe . . . beyond a reasonable doubt that . . . defendant, Elmer Merriman, did, . . . with a premeditated design . . . to affect the death of . . . E. O. Marshall, shoot and discharge a leaden bullet into . . . E. O. Marshall . . . from which said mortal wound the said E. O. Marshall did . . . die, then it will be your duty to convict the defendant, Elmer Merriman, of murder, as charged in the information." Defendant's argument fails for it is apparent from the reading of the instruction that the court did not instruct the jury that defendant shot the deceased with a lead bullet. Rather, Instruction Number Eighteen advised the jury that "if you shall find and believe" defendant shot the deceased with a leaden bullet with premeditated design, it was their duty to convict the defendant of murder as charged. The jury obviously did not so find and believe as they convicted the defendant of manslaughter. Thus we find that the defendant's complaint with this instruction is without merit as his quarrel with the word "leaden" bullet does not disqualify the entire instruction as to its accuracy and appropriateness. See

Sharp v. State, Okl.Cr., 407 P.2d 593; Barber v. State, Okl.Cr., 388 P.2d 320.

Defendant further argues, also citing Instruction Number Eighteen, that the trial court erred in failing to instruct and advise the jury on the defendant's theory of defense, which was justifiable homicide or self-defense based on the aggression of the deceased. We cannot agree. The trial court accurately and competently instructed the jury as to the law regarding homicide, murder, first degree manslaughter, self-defense, and justifiable homicide. The instructions fully covered the defendant's theory of defense. There is no grounds for reversal where the trial court's instructions considered together fairly and accurately present the issues involved, and no fundamental error occurs whereby the defendant has been prejudiced or deprived of a substantial right. Cody v. State, Okl.Cr., 376 P.2d 625; Young v. State, Okl.Cr., 357 P.2d 562.

■ The last instruction challenged by the defendant informed the jury of the statutory good time credits deducted from a prison term. It is error to instruct on possible reduction on commutation of a sentence of imprisonment. Cox v. State, Okl.Cr., 491 P.2d 357. Specifically, it is error to advise and instruct a jury as to the statutory good time credits allowed as deductions from a term of imprisonment. Williams v. State, Okl.Cr., 461 P.2d 997. However, such an error in a two stage proceeding requires modification of the sentence, rather than reversal of a conviction. Williams v. State, supra. In the instant case, the instruction as to good time credits was given the jury in the second stage of the proceeding after they had found him guilty of manslaughter. Thus, the error would support nothing more than modification in the instant case. We are, however, without the authority to modify the sentence in the instant case since the jury imposed the minimum term of imprisonment provided by statute upon conviction for first degree manslaughter. Title 21 O.S.1971, § 715.

■ It is defendant's final contention that the trial court erred in admitting into evidence a confession made by the defendant prior to being advised of his constitutional rights. Defendant claims that it was error for the trial court to allow the testimony of Deputy Sheriff Arnold as to the remarks made by defendant when Arnold encountered defendant at the Heard residence. Arnold testified that when he arrived at the Heard residence, he asked, "What-what happened? What was goin' on?" and the defendant got up, came over to him, and said "that E. O. Marshall had shot him and that he in turn shot E. O. Marshall." Deputy Arnold had been sent to the Heard residence by the Sheriff who advised him that "there had been a shooting." Before arriving at the Heard residence, Deputy Arnold did not know who had been shot or who was involved in the reported shooting, and at that time he was investigating a reported shooting. Arnold testified that "after I found there had been shooting, I told him [defendant] that he needed to be advised by an attorney; and anything he might say might be used against him, for him to get an attorney." Deputy Arnold did not question or interrogate the defendant. Defendant's remark to Deputy Arnold was volunteered and unsolicited.

Defendant relies upon Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The thrust of *Miranda,* as we see it, is that concessions obtained absent counsel, or valid waiver of same, during custodial interrogations are inadmissible. In this case, defendant's statement was not made during custodial interrogation. Not only was defendant not in custody, he was not yet a police suspect for a particular offense. When Deputy Arnold arrived in the yard of the Heard residence he was investigating a reported shooting. The situation was not accusatorial. See Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Defendant's statement to Deputy Arnold was freely and voluntarily given without compelling influence.

In Miranda v. Arizona, supra, the Supreme Court stated:

"Any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. * * * There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." 384 U.S. at 478, 86 S. Ct. at 1630.

Therefore, having considered the assignments of error and finding them to be without merit, we conclude that the judgment and sentence should be, and the same is hereby, affirmed.

BUSSEY, P. J., and SIMMS, J., concur.