John W. WALL, Jr., Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–74–276.

Court of Criminal Appeals of Oklahoma.

Aug. 15, 1974.

Kenneth Butler, Okmulgee, for appellant.

Larry Derryberry, Atty. Gen., James L. Swartz, Asst. Atty. Gen., David K. McCurdy, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant John W. Wall, Jr., hereinafter referred to as defendant, was charged, tried and convicted in the District Court, Okmulgee County, Case No. CRF–72–70, for the offense of Illegal Distribution of a Controlled Dangerous Substance. In accordance with the recommendation of the jury, the court sentenced defendant to a term of ten (10) years imprisonment and a fine of Five Hundred ($500.00) Dollars.

From said judgment and sentence a timely appeal has been perfected to this Court.

The first witness on behalf of the State was Earl Frederick, who testified that he had been a narcotics undercover agent working with the Okmulgee County Sheriff's Office in cooperation with the Oklahoma State Bureau of Investigation in Okmulgee, Oklahoma, in the Spring of 1972. He stated that he had been a classmate of defendant's at Okmulgee State Tech on the afternoon of March 22, 1972. At that time defendant approached him in an auto mechanics class and volunteered to sell him some LSD. Arrangements were made to meet that evening at the apartment of an Anita Gail Crabb, where the transaction was to take place. He stated that he went to the apartment at approximately 9:00 p. m. in the company of Susie Jordan, an undercover operative for the Oklahoma State Bureau of Investigation. Defendant arrived 15 to 20 minutes later in the company of another male and two females. Upon seeing Frederick, defendant asked him if he still wanted to buy the LSD, to which Frederick replied that he did. Thereupon, defendant went to his van, parked outside, and returned momentarily. He then sold Frederick "four (4) hits of window pane acid" (four doses of LSD in the form of small pieces of clear plastic), for $2.50 apiece, or for a total of $10.00. Frederick stated that one of the "hits" was lost in the carpet during the transfer, and that a subsequent search for it was unsuccessful. During the search, which lasted for approximately ten minutes, Frederick's gun fell out of his boot, causing some concern among those present. Shortly thereafter, Frederick and Susie Jordan left with three "hits" of the LSD in their possession. From the apartment, they proceeded to a prearranged meeting with Captain Fred Baker of the Okmulgee Police Department and Jim Frederick, Earl Frederick's father, who was also involved in the investigation. Frederick further testified that the remaining three "hits" of LSD were apparently dropped while he attempted to hand them to Captain Baker in Baker's car.

The second witness for the State was Elizabeth Sue Jordan, the above-mentioned undercover narcotics operative of the Oklahoma State Bureau of Investigation. Her testimony as to the transaction was substantially the same as Earl Frederick's. She further testified that she had operated in an undercover capacity in Okmulgee for six to seven weeks, prior to which time she had worked at an Oklahoma City religious-drug counselling establishment called "God's Crash Pad."

Okmulgee County Sheriff Harry Liles next testified for the State that he had known and approved of the arrangement whereby Earl Frederick was deputized and used as an undercover narcotics agent. He also stated that Frederick was paid a lump sum of Six Hundred ($600.00) Dollars for his services.

Captain Fred Baker next testified as to his role in the case. He stated that he and Jim Frederick had followed Earl Frederick and Sue Jordan to the apartment where the transaction took place. Using binoculars and with the aid of a nearby street lamp, they observed defendant arrive shortly thereafter in a VW van and enter the apartment. They later saw defendant come out to the van and return inside. Captain Baker next testified as to the later meeting at which Earl Frederick attempted to hand him the three LSD "hits." Baker stated that two of the "hits" were dropped in the transfer, but that he had placed the one remaining "hit" in a capsule, which he placed in an evidence envelope which he signed, sealed, and later transported to the OSBI laboratory. He also testified that he later found one of the "hits" of LSD which had been dropped on the floorboard of his car, but that he had not included it as evidence since the chain of custody had been broken.

The State's next witness was Jim Frederick, whose testimony was in large measure a repetition of Captain Baker's.

The final witness for the State was William J. Cabeny, a chemist for the Oklahoma State Bureau of Investigation, who stated that his tests revealed the substance in question to be LSD. Thereupon, the State rested.

Defendant rested his case without presenting any witnesses, after which the jury returned the verdict as above set forth.

In his first assignment of error, defendant argues that 63 O.S.1971, § 2–401, under which he was prosecuted, is unconstitutional. The alleged basis of unconstitutionality lies in the fact that the statute provides that a sentence imposed thereunder shall not be subject to statutory provisions for suspended sentences, deferred sentences, or probation. Defendant argues that freedom is a fundamental right, and its deprivation can only be accomplished through a narrowly drawn statute based upon a compelling state interest. He further argues that the above-cited statute fails to meet these requirements, hence it constitutes a violation of equal protection.

In his first assignment of error, defendant argues 63 O.S.1971, § 2–401 is unconstitutional in that it prohibits suspended sentences, deferred sentences or probation upon conviction for sale and distribution of controlled dangerous substances. Such, argues defendant, constitutes a denial of equal protection. We disagree, and reiterate the position taken in Black v. State, Okl.Cr., 509 P.2d 941 (1973), wherein we stated:

" . . . [W]e observe that the provision of 63 O.S.1971, § 2–401, which prohibits the suspension of a sentence upon conviction of the sale of the enumerated items is constitutional. We further observe that such prohibition does not represent an encroachment upon the Judicial Branch by the Legislature, nor does the same violate the Fifth, Eighth, or Fourteenth Amendments to the Constitution . . . ."

See also Doyle v. State, Okl.Cr., 511 P.2d 1133 (1973), where we specifically dealt with an equal protection argument similar to that raised by defendant in the instant case. Based upon the above-cited authorities, we find defendant's first proposition to be without merit.

In his second proposition, defendant alleges that the prosecutor made inflammatory remarks during closing argument which denied him a fair trial. However, defense counsel failed to designate either the prosecutor's closing argument or his own closing argument, and defense counsel's closing argument was not even transcribed. Under such circumstances we cannot consider allegations of prejudicial closing remarks by the prosecutor for the same reasons we cited in Glover v. State, Okl.Cr., 524 P.2d 51 (1974):

"The defendant's first proposition urges essentially that in the State's closing argument the prosecuting attorney made disparaging remarks concerning defense counsel, which were prejudicial to the rights of the defendant. The defense counsel, Mr. Butler, raises as prejudicial error, parts of the prosecuting attorney's closing argument; however, he fails to designate in the record either the State's closing argument, or his own closing argument. Since the record does not disclose Mr. Butler's[1] closing remarks, it is impossible to determine whether the remarks of the prosecuting attorney, now complained of, were invited or provoked by defense counsel's closing argument. In Cody v. State, Okl.Cr., 376 P.2d 625, 630 (1962), the Court followed the rule in Grimes v. State, Okl.Cr., 365 P.2d 739, by stating:

" 'Ordinarily error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellant court of what preceded the alleged objectionable remarks and their meaning to be de-

---

1. The same defense counsel as in the instant case.

duced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel.'

\*     \*     \*     \*     \*     \*

"But again, since defense counsel did not designate in the record his own closing argument, he cannot allege error on the prosecuting attorney's remarks alone."

In addition, we refer to Stucker v. State, Okl.Cr., 493 P.2d 84 (1972), where we noted that it is the responsibility of the defense counsel to protect his own record. We, thus, find defendant's second proposition of error to be without merit.

For all of the above and foregoing reasons, the judgment and sentence appealed from is affirmed.

BLISS, P. J., concurs.

BRETT, J., concurs, except as to Black v. State, supra.