## GEORGE BLISS v. STATE.

No. A-7338.    Opinion Filed May 2, 1930.
(287 Pac. 778.)

226

M. L. Minton, for plaintiff in error.

J. Berry King, Atty. Gen., and Smith C. Matson, Asst. Atty. Gen., for the State.

DAVENPORT, J.  The plaintiff in error, hereinafter referred to as the defendant, was convicted for the larceny of a cow, and was sentenced to imprisonment in the state penitentiary for five years.  Motion for a new trial was filed, considered, and overruled, and the defendant has appealed to this court.

The state, to sustain the allegations of the information, called Eli Smith, who testified that "on or about the 12th day of October, 1927, I lost a Durham-Herford cow from my pasture in Beckham county, Okla. My pasture adjoins Bert Everett's. I had 25 or 30 head of cattle in the pasture at the time I lost the cow; I found tracks of two horses, a cow, and a man's track, where they crossed the

fence on the west side of my pasture; the tracks turned south after they got out of my pasture. Mr. Baker lives south and Mr. Bullard about a mile south of my pasture. The cow was taken without my knowledge or consent." On cross-examination witness stated:

"I am not positive how long the cow has been taken before I missed her. I live four miles north of the pas-' ture. No gate between my pasture and Everett's pasture, but the fence was down where I found the tracks of the two horses, the cow, and the man. Mr. Bullard has a pasture about a half mile south of mine."

W. L. Mooney, called as a witness for the state, in substance stated:

"I am 61 years of age. I knew the defendant in October, 1927. We have been together a right smart. I saw the defendant about October 12, 1927. I went to his house on South Elm about six or seven miles southwest of Everett's pasture. Two or three days before I went to defendant's house I talked with Mr. Everett about a stray cow in his pasture. The defendant and I went up to the Everett pasture and got the stray cow to sell. I did not know whose cow it was. We drove the cow a little west into the Smith pasture, a little southwest from the fence into the lane, then about a quarter of a mile south, and turned west into a canyon and went near the defendant's house, taking the cow along. We took another cow from Baker's pasture; we took the two cows to the defendant's pasture around the river below the old Buckles ranch, and from there to Texas, putting them in Tom Wall's pasture. I agreed with the defendant to sell the cows, and told the defendant I would be back in two or three days; I sold the cows to Clyde Bridges, at Shamrock, put the money in the Erick Bank, and gave the defendant a check for his half; have been convicted of receiving stolen property, but did not serve a term."

On cross-examination witness stated he was under indictment in Texas for cattle theft; "that the prosecution in

this case had said nothing to him about giving me immunity if I testified for the state in this case." Witness then goes into detail as to the route he and the defendant traveled after they started with the cow from Everett's pasture until they arrived in Texas and sold the cow and deposited the money in the bank and gave the defendant a check for it.

H. B. Bullard testified:

"I know Bert Everett and Eli Smith. I was living about a mile south of the Smith pasture in October, 1927; saw Mr. Mooney and the defendant pass through my pasture going north; this was about the 15th day of October, 1927. They were about a quarter of a mile away from me, on horseback. They looked at a mare and colt that belonged to me, and then went out of sight into Mr. Baker's place. Going north, Mr. Everett's pasture is a half mile north and a half mile west. They were just a half mile from Mr. Smith's pasture when I saw them."

On cross-examination witness stated he was about a quarter of a mile away from the parties; that he saw their faces, and knew it was Mr. Mooney and the defendant.

Harper Baker also testified that he knew Eli Smith and M. L. Mooney; he saw the defendant and Mooney about the time the cow was alleged to have been stolen; they were about a half mile from him, going north. Herman Hart testified about the time the cow was taken he saw two men come through his pasture; they were on horseback, driving a cow or two, traveling south and west. He was not close enough to see who they were. "This was just before I learned the Smith cow had been taken." This is in substance the testimony that was introduced by the state.

At the close of the state's testimony, the defendant demurred to the testimony, and moved the court to direct

a verdict in favor of the defendant, for the reason that the testimony is insufficient in law to prove that an offense had been committed against the laws of the state of Oklahoma, or that the defendant had anything to do with the commission of said offense, if any offense was committed, which motion was heard by the court and overruled, and defendant saved an exception.

Twelve errors are assigned by the defendant alleged to have been committed by the trial court in the trial of his case; the eleventh assignment being that the verdict of the jury was not supported by the evidence, in that there was no evidence corroborating the accomplice's testimony, which tended in itself, without considering the accomplice's testimony, to connect the defendant with the commission of the offense.

The question to be considered is whether or not there is sufficient testimony in the record corroborating W. L. Mooney, who is admitted to be an accomplice of the defendant. Mooney detailed all the facts and circumstances concerning the taking of the cow, and in doing so he described the manner in which they went to the Smith pasture and the route traveled in returning with the cow from the pasture. Bliss told Mooney about the cow being in the Everett pasture, and the defendant, Bliss, told him that Everett stated the cow was a stray. The witness Everett testified that Bliss was the only person he told about his cow being in the pasture. The other witnesses, Bullard, Hart, and Baker, saw the defendant and Mooney riding in the direction of the Smith and Everett pastures about the time the cow was missed. Hart could not identify the defendant and Mooney as being the parties he saw riding toward the Smith and Everett pastures, but Bullard and Baker did identify them, and shortly after they were seen going in the direction of the pasture Hart testi-

fied he saw two men on horseback returning with a couple
of cows. The testimony of the accomplice, Mooney, shows
they got one of the cows in the Everett pasture and passed
out through the Smith pasture at the southwest corner,
weighting down the Smith fence so they could cross over
it. Mooney says they went on to the Baker pasture and
got another cow. Smith, the owner of the cow taken
from the Everett pasture, tells where the fence was taken
down at the southwest corner, where he saw the tracks
of two horses, a cow, and a man. No testimony is of-
fered by the defendant contradicting any of the testimony
of the accomplice, Mooney, or the other witnesses who
testify in the case. The testimony is undisputed that the
day the cow was taken Mooney was at the home of the de-
fendant, and that he and the defendant were seen to-
gether going in the direction of the Smith and Everett
pastures. Shortly thereafter the cow described in the in-
formation and the proof was missed from the pasture. Eli
Smith was the owner of the cow, and that the party was
tracked out of the pasture where the witness Mooney says
they went out, about the same time the two parties un-
identified by the witness Hart were seen driving two cows
coming from the direction of the Smith pasture.

In order to sustain the conviction, there should be
testimony independently of the accomplice's testimony
tending to connect the defendant with the commission of
the offense. It is not sufficient that the testimony
independent of the accomplice's testimony show the com-
mission of the offense. It must show more than the mere
commission of the offense or circumstances thereof.

In Moody v. State, 13 Okla. Cr. 327, 164 Pac. 676, in
the first, second, and third paragraphs of the syllabus, the
court said:

"1. Evidence corroborative of an accomplice need not directly connect the defendant with the commission of the crime; it is sufficient if it tends to connect him with its commission.

"2. Evidence corroborating an accomplice and tending to connect the defendant with the commission of the crime need not be direct, but may be circumstantial only.

"3. It is not essential that the corroborating evidence shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty. If the accomplice is corroborated as to some material fact or facts by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all. Such corroborating evidence, however, must show more than the mere commission of the offense or the circumstances thereof."

The contention of the defendant is that there is not sufficient corroboration of the accomplice's testimony to justify a conviction, and has cited a long line of authorities showing that an accomplice must be corroborated. We cannot agree with the contention of the defendant. Independent of the testimony of W. L. Mooney connecting the defendant with the commission of the crime, the record discloses a number of circumstances which, when considered together, in our opinion, also tend to connect the defendant with the crime. Standing alone, these independent facts and circumstances would not be sufficient to authorize a verdict of guilty, but, under our statute, the corroboration of the accomplice does not have to be sufficient to establish the guilt of the defendant beyond a reasonable doubt. It is sufficient if it tends to connect the defendant with the commission of the offense. These independent facts and circumstances must go farther than a mere proof of the commission of the offense, or proof of the circumstances surrounding its commission.

After a careful study of all the testimony contained in the record, we hold that the testimony of the accomplice, W. L. Mooney, is sufficiently corroborated, and that the evidence is sufficient to sustain the conviction. Counsel for the defendant in his brief argues the instructions of the court were prejudicial to the rights of the defendant. After a careful reading of the instructions, we conclude that the instructions taken together are fair to the defendant and correctly stated the law; if anything, they were more favorable to the defendant than to the state. It is also urged by the defendant that the attorney for the prosecution in his closing argument made an improper argument. The closing argument of the attorney for the state is reported in full in this record. We have studied this argument, and we cannot find any statement contained therein that we consider improper or outside of the record. In summing up the testimony, the state's attorney used a great many illustrations, but we hold these were not improper and did not redound to the prejudice of the defendant.

Finding no fundamental or prejudicial errors in the record possessing sufficient merit to warrant a reversal, the judgment is affirmed.

EDWARDS, P. J., and CHAPPELL, J., concur.