Harold VEALES and Jessie Vester,
Plaintiffs in Error,

v.

The STATE of Oklahoma, Defendant
in Error.

No. A–13125.

Court of Criminal Appeals of Oklahoma.

Sept. 19, 1962.

Everett E. Berry and James M. Springer, Jr., Stillwater, for plaintiffs in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

NIX, Presiding Judge.

Harold Veales and Jessie Vester, hereinafter referred to as the defendants, were charged by Information in the District Court of Payne County with the crime of Burglary 2nd Degree. They were tried before a jury, found guilty as charged and their punishment assessed at 2 years in the Oklahoma State Penitentiary.

The defendants lodged their appeal within the time prescribed by law asserting as their main contention of error that defendants were the victim of an illegal arrest, search and seizure and the trial court erred in admitting certain items in evidence.

The record relates the facts upon which the charge was founded and it is necessary to briefly state them herein in order to present the issue to be determined.

The transcript reveals that between the hours of 1:00 A.M., and 2:00 A.M. on October 7th, a beer tavern known as "The Hill" located 11 miles east of Stillwater in Payne County, was broken into by prying the locks off of a door. The owner made the discovery and had his wife call the Sheriff of Payne County, who arose from bed, dressed, and proceeded to the scene. While en route, he communicated by radio with the City Police of Stillwater. A city patrol car containing four City Police Officers followed the Sheriff to "The Hill" traveling on Highway 51 at a speed of something in excess of 100 miles per hour. Shortly before arriving at the scene, the Sheriff further communicated with the city police by radio and asked them to check a parked car at the intersection of Highway 51 and the old Carl Blackwell Lake Road. However, when the city police arrived at the intersection, there was no parked car. They let one officer out and proceeded to "The Hill". The officer left at the intersection testified that he looked down the Lake Road and saw some dust and then the tail lights of a car, a distance of ¼ to ½ mile. He whistled and hollered at the City Patrol Car and they returned and picked him up and drove rapidly toward the car, driving on the Old Lake Road. Officer Brazzel testified as follows:

"A. We proceeded south down to where we had seen this dust and the car lights come on, we proceeded south after this car.

"Q. When you were proceeding south after the car, did the car do anything unusual?

"A. Yes, Sir, it looked to us that it had stopped and both of the doors were open, *both doors were open on the car and it seems as though this car had stopped, and we went on* and the car had started up and we were going south at a pretty good rate of speed and they had started up and had went just a little ways and we had the red light on them and they stopped.

"Q. Now, did you see this car traveling south without its lights on?

"A. I did not see the car until the tail-lights came on, I did not see the car at all, I just seen the dust flying, and then I seen the tail-lights come on."

He further testified as follows:

"Q. Did you turn on your light?

"A. Our red light?

"Q. Yes.

"A. Yes, sir.

"Q. And did they stop?

"A. Yes, sir, they did.

"Q. Did you order them to do anything?

"A. We ordered them to get out of the car.

"Q. What action did they take?

"A. Well, they sat there for a little bit, and we ordered them out again and they was kind of hesitant about getting out of the car, and as we left the city limits I took the sawed-off shotgun out of my patrol car that I left set at the Intersection of Highway 51 and Western and I had it with me, and I racked the shotgun back and they got out of the car.

"Q. Did you know that a burglary had been committed at 'The Hill' at that time?

"A. Well, that's what we were told.

"Q. Did you stop these people on the suspicion they had committed a burglary?

"A. We did.

"Q. After they got out of the car, what action did you take?

"A. They got out of the car with their hands up and we searched them to see that they didn't have a gun and we put the handcuffs on them.

"Q. Then what happened, Mr. Brazzell?

"A. The Sheriff was notified that we had a car with two subjects stopped a little over a mile south of the highway.

"Q. Did the Sheriff come down there to meet you?

"A. He did.

"Q. Did he take custody of the prisoners?

"A. He did."

The testimony further reveals that after defendants were ordered out of the car at gunpoint, handcuffed and searched, one of the officers took the keys to the car, opened the trunk, searched therein and found a large screw driver, a lug wrench, a hammer and some fishing tackle.

During the process of the arrest they noticed that one of the boys was wearing a sharp pointed shoe with no heel.

They were then taken to jail in Stillwater, one placed in the County Jail and the other in the City Jail.

It later developed that the screw driver and tire tool fit the mark that had been made on the door to "The Hill". Shoe tracks were found near the building and at the point where the boys were apprehended. They compared to the sharptoed, heelless shoe worn by one of the defendants. Also, fingerprints were found in the building on the juke box that compared to the prints of defendant Jessie Vester.

The record reflects that defendant was charged with an Information filed on the District Court on November 1, 1960 and defendant filed a motion to Suppress on November 14, 1960, setting up the following grounds:

"1. That a purported arrest was made of the defendant, Vester, by police officers of the Stillwater Police Department at a point approximately eight miles West of the City Limits of the City of Stillwater, said purported arrest being made without any authority of the arresting officers and no offense being committed within the presence of said officers;

"2. That incidental to said purported arrest the officers of the Stillwater Police Department searched the vehicle owned by this defendant and obtain-

ed certain tools used in evidence, said tools being unlawfully obtained;

"3. That as an incident to said unlawful arrest, plaster of Paris moldings of the defendant, Vesters, shoes were made, for comparative purposes to be used in said cause, said shoes being unlawfully taken from the person of this defendant because of said unlawful arrest;

"4. That this defendant was finger printed against his will and consent being in the custody of the Sheriffs Office of Payne County because of the unlawful arrest and said finger print is evidence unlawfully obtained."

The minutes reflect that this motion was withdrawn at the request of defendant and agreement of County Attorney as of January 31, 1961, at which time defendants entered a plea of Not Guilty. During the course of this trial immediately following the opening statement of the County Attorney, defendant moved for a dismissal of the charge on the grounds the arrest and search and seizure were illegal, including the taking of finger prints and the use of the cast made of footprints.

There was no evidence presented in support of this Motion. The Motion was overruled and exceptions taken. It is to be noted that when the various exhibits were offered in evidence, there were no objections on part of defendant. When the State rested, defendant again raised the question.

■ The Court is unable to understand the strategy of defendant in withdrawing the Motion to Suppress, unless it was an abandonment or waiver of the question.

■ This Court has held in Kelso v. State, 97 Okl.Cr. 215, 260 P.2d 864:

"An objection to evidence as obtained by illegal search and seizure must be interposed at first opportunity and should be made either at beginning of trial by motion to suppress evidence or in course of examination as soon as it becomes apparent that state will rely thereon, and defendant failing to make timely objection waives right to be heard upon this question." (See White v. State, 81 Okl.Cr. 399, 165 P.2d 151.)

Defendant well knew what the State would rely on as he so ably stated it in the Motion to Suppress. He should have put on the testimony to support his motion and given the trial judge an opportunity to pass on it, instead he chose to withdraw the Motion and plead to the merits of the case.

The Court went further and said in the cases, McGilvery v. State, 50 Okl.Cr. 376, 298 P. 312; and Keeler v. State, 24 Okl. Cr. 206, 217 P. 228:

"Where the defendant pleads to the merits of a criminal action, he waives all objection to the illegality of his arrest."

■ In this connection, the court should in all instances permit the withdrawal of a plea for the purpose of filing a Motion to Suppress.

■ The only objection made by defendant was at the conclusion of opening statement, (there was no evidence to support same) and after State had rested. He made no objection when the various articles were offered in evidence.

The Court said in Thacker v. State, Okl. Cr., 303 P.2d 448:

"The objection to illegal evidence, where known to the accused, should be made by motion or otherwise before the trial begins, but may be made during the trial when the evidence is offered. The objection is not timely made when such evidence is developed and admitted without objection, and is first raised at conclusion of testimony by motion to strike."

Defendants withdrawal of his Motion to Suppress indicates an abandonment. The objections were not timely and the question was therefore waived. The judgment and sentence of the trial court is Affirmed.

BRETT and BUSSEY, JJ., concur.