Gary Dale CASKEY, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–15640.

Court of Criminal Appeals of Oklahoma.

April 12, 1972.

Carroll Samara, Oklahoma City, for plaintiff in error.

Larry Derryberry, Atty. Gen., James L. Gullett, Asst. Atty. Gen., for defendant in error.

BUSSEY, Presiding Judge:

Gary Dale Caskey, hereinafter referred to as defendant, was charged, tried, and convicted in the District Court of Oklahoma County, Oklahoma for the offense of Burglary in the Second Degree, After Former Conviction of a Felony. His punishment was fixed at ten (10) years imprisonment, and from said judgment and sentence, a timely appeal has been perfected to this Court.

At the trial, Edward Taylor testified that on April 23, 1969, his home in Del City was broken into, and that several items of per-

sonal property were taken, including a portable color television set, a stereo set, some clothing, and a gold wedding ring. He identified a television set and a gold band, which were introduced into evidence without objection. Edward Taylor testified that he left his home at approximately 11:30 a. m., on April 23, and upon his return at about 12:30, he discovered that the glass in the back door had been broken out, and the door was unlocked.

Captain Cain, of the Del City Police Department, testified that in the early morning hours of April 24, 1969, he and other officers went to Apartment 302, Lakeview Towers Apartments, "to locate a boy by the name of Michael White or Michael Sims." In the apartment, the officers found Robert Michael White, a/k/a Robert Michael Sims, Douglas Zolper, an individual named Grove, two other boys, and a girl. The defendant was lying across the bed in the back bedroom. A stereo set was found in the living room, the television set was found in the first bedroom, and the gold ring was taken from the hand of Robert Michael White.

Bradley Douglas Zolper testified that on April 23, 1969, he, Sims, and the defendant, drove to the Taylor house, where Sims broke out the back window. All three entered the residence and at Sims' direction, the defendant took the television set and placed it in Zolper's car. Sims took the stereo, and the three took the items to the Lakeview Towers Apartments, Number 302, which Zolper rented with three other boys.

The defendant testified that he had spent several nights at the apartment, and that on the day in question, Sims asked him to go with him and Zolper to pick up a stereo and a television set that Sims stated he had bought from some relatives. He testified that he did not know that Sims boke into the house, and he picked up the television set at Sims' instruction; he admitted two prior convictions for burglary.

Two character witnesses testified that, in their opinions, the defendant had a good reputation for truth and veracity.

■ The first proposition asserts that the trial court erred in failing to sustain defendant's demurrer to the State's evidence, as there was no corroboration of the accomplice. We have carefully considered the testimony of all the witnesses, and conclude that Zolper's testimony was, in fact, corroborated. Zolper testified that Sims broke into the residence, and that the defendant entered and carried the television set to Zolper's car. The television set and the stereo set were then carried to Zolper's apartment.

■ Police officers testified that the stereo and television sets were found in the apartment within fourteen hours from the time of the breaking and entering. In the recent case of Nation v. State, Okl.Cr., 478 P.2d 974, we stated:

"It is the law in this state that an accomplice's testimony need not be corroborated as to every material point. If the accomplice is corroborated as to one material fact, or facts, by independent evidence tending to connect the defendant with the commission of the crime, the jury may from that infer that he speaks the truth as to all."

We further observe that, disregarding the testimony of the accomplice Zolper, there was sufficient evidence to support the jury's verdict. Defendant was found in a room in the same apartment where the recently stolen television and stereo sets were found by the police officers, thus being in constructive possession. The defendant elected to testify, and admitted being at the scene of the crime and carrying the television set to the accomplice's car. The question as to the defendant's intent to steal therein was a proper question for the jury. We, therefore, find this proposition to be without merit.

■ The final proposition contends that the trial court erred in overruling the defendant's motion to suppress the evidence, in that said evidence was obtained in violation of defendant's constitutional and statutory rights. We need only observe that the Record reflects that the television

set and the gold ring were admitted into evidence without objection by the defendant. The defendant did not file a motion to suppress at the beginning of the trial, and did not raise the issue until the State had rested. In the recent case of Fischer v. State, Okl.Cr., 483 P.2d 1162, we cited the case of Shirey v. State, Okl.Cr., 321 P.2d 981, as follows:

" ' "An objection to evidence obtained by illegal search and seizure must be interposed at first opportunity and should be made either at beginning of trial by motion to suppress evidence or in course of examination *as soon as it becomes apparent that state will rely thereon,* and defendant failing to make timely objection waives right to be heard on such questions." (Emphasis ours.)' "

Although this proposition is improperly before us, in that it was not timely raised, we are of the opinion that the proposition should be discussed. Defendant argues, however, that although he had no possessory interest in the apartment, he retained standing to challenge the legality of the search.

It has long been the law of this state that the right to question the validity of a search is personal to occupant of the premises searched. Chanosky v. State, 52 Okl. 476, 153 P. 131 (1915). This rule of law has been followed by this Court until the recent case of Lindsey v. State, Okl. Cr., 488 P.2d 935, wherein we stated:

"Thus, we expressly hold a possessory interest in the premises searched or object seized is not the final test of standing to question the reasonableness of a search and seizure. Rather, a person has standing to challenge the legality of a search where he is the victim of the search, one against whom the search was directed."

Our holding in the case of *Lindsey,* supra, was based upon the United States Supreme Court decisions in Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697, and Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797. We have carefully considered these opinions in light of the later case of Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed. 2d 176. In *Alderman,* supra, the Court held that co-conspirators or co-defendants who had no possessionary interest in the premises searched could not assert their standing to object to an illegal search unless they were persons against whom the search was directed. The Court stated:

"What petitioners appear to assert is an independent constitutional right of their own to exclude relevant and probative evidence because it was seized from another in violation of the Fourth Amendment. But we think there is a substantial difference for constitutional purposes between preventing the incrimination of a defendant through the very evidence illegally seized from him and suppressing evidence on the motion of a party who cannot claim this predicate for exclusion.

"The necessity for that predicate was not eliminated by recognizing and acknowledging the deterrent aim of the rule. See Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Elkins v. United States, 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960). Neither those cases nor any others hold that anything which deters illegal searches is thereby commanded by the Fourth Amendment. The deterrent values of preventing the "incrimination of those whose rights the police have violated have been considered sufficient to justify the suppression of probative evidence even though the case against the defendant is weakened or destroyed. We adhere to that judgment. But we are not convinced that the additional benefits of extending the exclusionary rule to other defendants would justify further encroachment upon the public interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth."

The Court, in limiting the exclusionary rule, was thus of the following opinion:

" * * * suppression of the product of a Fourth Amendment violation can be successfully urged only by those whose rights were violated by the search itself, not by those who are aggrieved solely by the introduction of damaging evidence. Coconspirators and codefendants have been accorded no special standing."

■ As this Court is bound by the constitutional decisions of the United States Supreme Court, the holding of this Court in *Lindsey,* supra, is modified to the extent that a person who does not hold a possessory interest in the premises searched or object seized does not have standing to challenge the legality of a search unless he was *specifically* the one against whom the search was directed.

In the instant case, the search was directed against Michael Sims, and the defendant, therefore, does not have standing to object. In conclusion, we observe that the Record is free of any error which would justify modification or require reversal. The judgment and sentence is affirmed.

SIMMS, J., specially concurring.

BRETT, J., dissenting.

BRETT, Judge (dissents):

I must respectfully dissent to this decision. As I view the record of this trial, absent the testimony of the accomplice, Zolper, there is absolutely no corroborating evidence whatsoever sufficient to implicate the defendant. The testimony of the other three prosecution witnesses merely showed that the Taylor home was broken into; that certain items of property were stolen; and that this defendant was in the apartment where the stolen property was found when the accomplices were arrested. The majority opinion recites that defendant's presence in the apartment is sufficient to place him in "constructive possession" of the stolen property, which serves as corroboration of the accomplice's testimony. My imagination does not stretch to those limits. I believe defendant's demurrer to the evidence was good and should have been sustained.

The pertinent part of 21 O.S.Supp.1961, § 1435, provides in part, the following:

"Every person who breaks and enters * * * with intent to steal any property therein or to commit any felony, is guilty of burglary in the second degree."

As I understand the element of intent in the statute, it is "specific intent" which must be proved. This record fails to show the necessary intent of the defendant to steal any property, or to commit any felony. Instead, the prosecution relied upon the two former convictions of this defendant to cause the jury to "imply" defendant's intent to commit a crime; and, that reliance proved good enough.

The accomplice, Bradley Douglas Zolper, plead guilty to second degree burglary and was given a one-year deferred sentence, as reflected by his testimony. Zolper related what transpired when the three went to the Taylor home; that Michael Sims, who turned out to be a friend of the Taylor boy, and had been in the Taylor home on several occasions, went to the front door and found it locked, and then went to the back of the house, broke the window and opened the door. Zolper related, referring to Michael Sims, "He got out of the car and went to the front door and tried it; it was locked, and he went around back, and I got out of the car and Mickey [Michael Sims] went to the back door, broke out the window and then Gary came walking up." (Tr. 33) He then related that Sims took the stereo, and defendant took the television, but he took nothing out of the house. No one who testified as this trial knew anything about the "gold ring" which was found on Sims' finger when he was arrested.

Cross-examination of the accomplice Zolper appears on Pages 40 and 41, of the transcript of testimony as follows:

"Q. How did he [defendant] come to go along with you?

"A. He was asked to go along.

"Q. Who asked him?

"A. Mickey [Michael Sims] and I.

"Q. Did Mickey make any comments as to whose place this was out there?

"A. From what I understood, it was relatives by marriage. (referring to relatives of Michael Sims)

Later, Zolper was asked:

"Q. And did he [Michael Sims] tell you who this television set and stereo belonged to?

".A. He stated it was his.

"Q. He told you it was his and told Caskey that it was his, is that right?

"A. Yes, sir.

"Q. Did either you or Caskey—did Caskey know that he was going to break into a place?

"A. No, sir."

In Sheehan v. State, 83 Okl.Cr. 41, 172 P.2d 809 (1946), this Court stated:

" * * * a person is guilty of burglary in the second degree who breaks and enters a building in which property is kept *with intent * * * to steal* therein or * * * to commit any felony." (Emphasis Added)

By the testimony of the state's own witness, the defendant understood that he was assisting Michael Sims get property which he said he had bought from his relatives, and which supposedly belonged to him. Consequently, I fail to see proof of the requisite element of intent.

Defendant, who was eighteen years old, was charged with this crime "after former conviction of a felony," which resulted in the ten-year penitentiary sentence, the minimum under 21 O.S.Supp.1968, § 51. When defendant testified in his own behalf, he admitted that he and another boy had earlier taken a stereo pack out of two different cars. Defendant's father appears to have voluntarily surrendered the boy to the police on those two counts; he entered a plea of guilty to the two counts and was given a two-year suspended sentence. It was those convictions upon which the prosecution relied for the jury to "imply" defendant's intent to commit a crime in this case.

Referring now to the majority opinion's criticism of Lindsey v. State, Okl.Cr., 488 P.2d 935 (1971), which criticism is premised upon the United States Supreme Court decision in Alderman v. United States, supra, I fail to see its applicability as a modification of *Lindsey*. In the first place, *Alderman* was concerned with a wire-tapping matter in which the petitioners asserted that the electronic eavesdropping might have violated their Fourth Amendment rights and tainted their convictions. Six members of the Supreme Court, speaking through Mr. Justice White's opinion, held that co-conspirators and co-defendants whose rights were not violated by illegal eavesdropping have no standing to object to the admission of evidence obtained as a fruit of such eavesdropping. That decision, in which five members agreed, also held that the owner of the premises, whether present or not, does have standing to object to the admissibility of such illegal evidence, even though he did not participate in the conversations. Five members of the Court also considered that the government should either dismiss the case, or disclose the illegally obtained evidence.

In *Alderman,* at page 186 in 22 L.Ed.2d and page 173 in 394 U.S. and page 966 in 89 S.Ct., the Supreme Court sets forth immediately preceding the citation quoted in this Court's majority opinion, the following:

"The rule is stated in Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 [702] [78 ALR2d 233] (1960):

'In order to qualify as a "person aggrieved by an unlawful search and

seizure" one must have been a victim of a search or seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. * * *

Ordinarily, then, it is entirely proper to require of one who seeks to challenge the legality of a search as the basis for suppressing relevant evidence that he allege, and if the allegation be disputed that he establish, that he himself was the victim of an invasion of privacy.'

"This same principle was twice acknowledged last Term. Mancusi v. DeForte, 392 U.S. 364, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968); Simmons v. United States, 390 U.S. 377, 88 S.Ct. 967 [19 L.Ed.2d 1247] (1968).

"We adhere to these cases and to the general rule that Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. [citations omitted] None of the special circumstances which prompted NAACP v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488 (1958), and Barrows v. Jackson, 346 U.S. 249, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953), are present here. There is no necessity to exclude evidence against one defendant in order to protect the rights of another. No rights of the victim of an illegal search are at stake when the evidence is offered against some other party. The victim can and very probably will object for himself when and if it becomes important for him to do so."

Following the restatement of the law of search and seizure in Jones v. United States, supra, the Supreme Court enters into the statement quoted in this Court's majority opinion. That statement, which starts out, "What petitioners appear to assert * * *," merely sets forth the unique contentions of the petitioners in *Alderman,* as they pertain to the use of evidence obtained by electronic eavesdropping. As

I view that decision, it precludes the extension of the exclusionary rule to include evidence seized from another person, in violation of that other person's Fourth Amendment rights.

The thrust of Lindsey v. State, supra, is set forth in the fifth paragraph of the editor's syllabus:

"To qualify as 'person aggrieved by unlawful search and seizure' one must have been victim of search or seizure, that is, one against whom search was directed, as distinguished from one who claims prejudice only through use of evidence gathered as consequence of search or seizure directed at someone else."

This appears to be essentially what the *Alderman* case held, when it provided that one person cannot assert violation of his constitutional right because evidence is obtained in violation of another's rights, as was done in *Alderman.*

Ironically, the majority Opinion recites on the one hand, that the accomplice's testimony is corroborated because defendant had "constructive possession" of the stolen property, because he was in the apartment when the officers arrived; but, on the other hand, notwithstanding that possession, they assert the defendant had no standing to object to the search. I believe this Court quite properly provided in Lindsey v. State, supra, in the first paragraph of the Syllabus of the Court, the following:

"The state cannot charge a person with a crime of possession and then deny that person his remedy at law to object to the search and seizure of that which the state says is his."

The majority opinion cites Chanosky v. State, 52 Okl. 476, 153 P. 131 (1915), to support the statement, "It has long been the law of this state that the right to question the validity of a search is personal to the occupant of the premises searched." I fail to see the relevancy in view of the more recent pronouncements of the United States Supreme Court. Recently, the Court of Appeals for the Ninth Circuit stated in

Wattenburg & Owens v. United States, 388 F.2d 853, 859 (Ninth Circuit, 1968):

"But, in any event, Owens did have standing to object to that search and seizure, not necessarily because of his status as a roomer at Hideaway Lodge, but because one of the essential facts the Government sought to prove against Owens was that he was a joint possessor of the Christmas trees. See Jones v. United States, 362 U.S. 257, 263–264, 80 S.Ct. 725, 4 L.Ed.2d 697; United States v. Jeffers, 342 U.S. 48, 52, 72 S.Ct. 93, 96 L.Ed. 59."

It must be conceded that defendant's objection to the evidence should have been entered prior to, or when the prosecution offered it into evidence, but notwithstanding the objection was entered before his demurrer to the evidence was entered. Nonetheless, I believe defendant's demurrer was good and should have been sustained. Therefore, in due respect to my colleagues, for the reasons hereinstated, I feel compelled to dissent to this decision. I dissent.

SIMMS, Judge (specially concurring):

Because of the dissent written in this case, it becomes imperative that a special concurring opinion be rendered, even though this writer is acutely aware of Bacon's admonition in his Essay of Judicature: "An over speaking judge is no well tuned cymbal."

While both opinions written by my colleagues dwell° at some length upon the standing of the defendant in this case to object to the seizure of the items stolen in the burglary, it is to be emphasized that defendant did not object to the introduction of the questioned evidence nor did he object to any testimony concerning same at the time it was offered. The initial attempt to have this evidence suppressed came at the close of the state's case.

The dissent concedes defendant's objection to this evidence should have been entered prior to, or when the prosecution offered it into evidence, "but notwithstanding the objection was entered before his demur-

rer to the evidence was entered." And the author of the dissent would have sustained a demurrer.

The transcript reflects that defendant, in the following order:

(1) Demurrered to the Evidence (Tr-48;
(2) Moved to Dismiss (Tr-49);
(3) Moved for a Directed Verdict (Tr-50); and finally,
(4) Moved to Suppress (Tr-50).

In addition to Fischer v. State, and Shirey v. State, as cited by Judge Bussey, the rule is most clearly enunciated in Thacker v. State, Okl.Cr., 303 P.2d 448 (1956):

"Counsel for the accused did not make timely objection to the introduction of the evidence. No motion to suppress the evidence was interposed and at the time the officers testified no objection was made to their testimony concerning the search and seizure of the whiskey. It was only at the conclusion of the evidence that counsel made a motion to strike the evidence pertaining to the whiskey for the reason that it was unlawfully obtained. Such motion came too late." Unless objection is made at the first opportunity when the alleged illegal evidence is sought to be introduced, the right of the accused to object to the admissibility of such evidence is waived."

See, also, Veales v. State, Okl.Cr., 374 P.2d 792 (1962).

Establishing, therefore, that the property taken in the burglary was not improperly before the jury, this question is then raised: "Is the presence of the defendant at the apartment where the stolen property is located a fact sufficient to corroborate an accomplice?

Turci v. State, Okl.Cr., 482 P.2d 611 (1971), supplies the answer. Turci was convicted of the offense of Burglary Second Degree, After Former Conviction of a Felony. He was arrested in an automobile with two other persons, and the automobile contained firearms taken in the burglary.

At trial, one of the persons arrested in the automobile, an accomplice, testified against the defendant. Judge Nix, addressing himself to the question of corroboration of an accomplice, wrote:

"It is defendant's further assignment of error that he was unlawfully convicted on the uncorroborated testimony of an accomplice in violation of 22 O.S.1961, § 742, which provides: [statute quoted verbatim]

"* * *

"Defendant is correct that the witness Donald Stoltz was an accomplice and his uncorroborated testimony would be insufficient to support a conviction. However, aside from Stoltz's testimony, the evidence established defendant's presence in the vehicle with the stolen guns and that he had one of the guns on his person. This is independent evidence which 'tends to connect the defendant with the commission of the offense' corroborating the accomplice's testimony beyond merely showing the commission of the offense." (Emphasis Added)

"It is not essential that evidence corroborating accomplice shall cover every material point testified to by the accomplice, or be sufficient alone to warrant a verdict of guilty. Crum v. State, Okl.Cr., 383 P.2d 45 (1963). From the corroboration by independent evidence of a material fact, the jury may infer that the accomplice speaks the truth as to all. Hardesty v. State, Okl.Cr., 291 P.2d 351 (1956). Corroboration as to a single material fact by independent evidence may be sufficient. Bliss v. State, 47 Okl. Cr. 225, 287 P. 778 (1930). Thus, we find in the instant case that there was corroboration by independent evidence of material facts that connect defendant with the commission of the crime."

Defendant, in this case, like *Turci,* was found together with the accomplice to be in possession, constructive or actual, of fruits of the burglary, and this independent evidence is, as a matter of law, corroborative of an accomplice and sufficient to submit the case to the jury.

The dissent complains of the failure of the state to prove "specific intent." What the defendant intended up until the moment he entered the burglarized house is of no legal consequence insofar as a determination of this appeal is concerned. The critical issue is his intent when he entered the house with his accomplices. That a burglary had in fact occurred is not in dispute.

This Court said in Cherry v. State, Okl. Cr., 276 P.2d 280 (1954):

"It has been held that, whether one intended to commit a crime in a house is determined by the intent of the individual at the time the unlawful entry was made. Logan v. State, 95 Okl.Cr. 76, 239 P.2d 1044. Intent was one of the questions of fact for the determination of the jury, and it was their sole province to weigh the evidence and the facts. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479; Potter v. State, Okl.Cr., 266 P.2d 647, 649, wherein we said:

'Exclusive of the direct testimony to the facts of the burglary, the circumstantial evidence of the state, in the absence of any reasonable explanation of the defendant, is sufficient to support the conviction.'

"That the jury did not believe the defendant's explanation is apparent."

Contrary to the statement in the dissent pertaining to the reliance of the prosecution upon two former convictions of the defendant, no evidence of these convictions were presented to the jury until such time as the defendant elected to testify and they were elicited from defendant on cross-examination as affecting his credibility.

By reason of the foregoing, I must concur in the result reached by Judge BUSSEY.