Howard GADDIS, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. A–17161.

Court of Criminal Appeals of Oklahoma.

May 24, 1972.

E. Melvin Porter, Oklahoma City, for appellant.

G. T. Blankenship, Atty. Gen., H. L. McConnell, Asst. Atty. Gen., for appellee.

## OPINION

SIMMS, Judge:

Howard Gaddis, hereinafter referred to as the defendant, was convicted in 1967 in the District Court of Oklahoma County of the crime of Murder and sentenced to Death in accordance with the jury verdict. The mandatory appeal was perfected to this Court, and, in Case No. A–14,579, Gaddis v. State, Okl.Cr., 447 P.2d 42 (1968), the judgment and sentence of Death was affirmed.

Thereafter, in early 1969, defendant sought a writ of Habeas Corpus in this Court, alleging among other things, that the jurors selected to try his cause were empanelled contrary to the guidelines established by the Supreme Court of the United States in Witherspoon v. Illinois, 391 U.S.

510, 88 S.Ct. 1770, 20 L.Ed.2d 776. The application for this writ of Habeas Corpus was denied in Gaddis v. Page, Okl.Cr., 455 P.2d 699 (1969).

Defendant then sought Habeas Corpus in the United States District Court for the Western District of Oklahoma in Howard Gaddis v. State of Oklahoma, United States Western District Case No. 69–393–Civil. On March 18, 1970, the United States District Court entered an order abating the proceedings in said Case No. 69–393–Civil, pending an exhaustion of Howard Gaddis' state remedies.

On March 9, 1970, pursuant to an application made by the then Attorney General of the State of Oklahoma, G. T. Blankenship, this Court entered an order in Case No. A–17,161 directing an Evidentiary Hearing be conducted in the District Court of Oklahoma County upon two questions raised in Federal Habeas Corpus proceedings. The Order of this Court directing an Evidentiary Hearing be conducted further directed the trial judge conducting said hearing to make findings of fact upon the following specified issues:

1. Were prospective jurors excused from duty because they expressed objection to imposition of the death penalty contra to the provisions of Witherspoon v. Illinois, supra?

2. Was evidence introduced into the trial which had been obtained in violation of a United States Constitutional right prohibiting an illegal search and seizure?

On July 28, 1971, the Honorable Clarence Mills, District Judge in and for Oklahoma County, conducted the Evidentiary Hearing ordered by this Court and at the conclusion of the adversary proceeding, Judge Mills, based upon the evidence presented to him, found in the negative on both issues.

The matter is now before this Court in the nature of an appeal from the trial court's denial of an application for Post-Conviction Relief.

In regard to question enumerated one, above, it must be emphasized, as it was in Gaddis v. Page, supra, that the voir dire examination of prospective jurors at time of trial was not reported and was therefore not contained in the original record before this Court.

However, in an attempt to satisfy the order of this Court with regard to the guidelines of *Witherspoon*, supra, being followed during the empanelling of the jury, the State of Oklahoma and the defendant entered into a written stipulation, which was presented to Judge Mills on August 24, 1971, which stipulation is marked Exhibit One and attached to the transcript of Post-Conviction Evidentiary Hearing. This stipulation reads as follows:

"That in this case, when the jury was being selected and on the voir dire examination, the jurors were advised by the District Attorney that if they found the defendant guilty beyond a reasonable doubt that the law required they could assess one of two penalties—either life imprisonment or death, and that that was the law of the State of Oklahoma. The jurors were then asked that if the State proved the defendant guilty beyond a reasonable doubt, would they, the jurors or any particular juror, in a proper case, consider assessing the death penalty. The jurors that were excused for cause if they would refuse to assess the death penalty regardless of the evidence, and those that were excused for cause answered that under no circumstances would they assess the death penalty.

The jurors that had stated that they would never consider assessing the death penalty under any circumstances regardless of the evidence were then asked if they in their mind knew whether or not they could ever consider assessing the death penalty no matter what the law was or the facts were in the case. Each juror that was excused for cause was asked specifically more than once if there could ever be a proper case where

they would consider assessing the death penalty, and each answered in the negative.

Those jurors that were accepted as jurors had stated that in a proper case they would consider the death penalty and that they would require the State to prove a defendant guilty beyond a reasonable doubt and would assume him innocent until the State met that burden."

We can only conclude after a thorough study of the written stipulation, that the safeguards of Witherspoon v. Illinois, supra, were applied in the selection of the jury, and therefore, defendant was not facing a "tribunal organized to return a verdict of death," nor does the stipulation present a situation where the "State of Oklahoma has stacked the deck against the defendant."

██ We, therefore, hold the negative finding made by the trial judge to the first enumerated question is amply supported by the record and the same is hereby adopted by this Court.

The second issue above designated, involving the constitutionality of the search and seizure of evidence adduced at trial, presents a most unusual situation.

Careful examination of both the case-made of the trial and of the transcript of the Post-Conviction Evidentiary Hearing reflect there were a total of four searches conducted.

██ As best we can sequentially reconstruct the searches, on January 14, 1967, Officer LeMay of the Oklahoma City Police Department, appeared before a Justice of the Peace in Oklahoma County, and obtained a formal search warrant for the home of the defendant: the premises being generally described in the testimony at trial as 2905 N. Prospect. The testimony adduced at the Evidentiary Hearing disclosed that no items of evidence were removed from the home under the authority of the January 14th search warrant, and therefore, defendant was not prejudiced thereby during the trial of the case.

██ The second search disclosed by trial testimony was directed toward the recovery of a .380 cal. Llama automatic pistol. Evidence at trial proved that defendant had given the automatic pistol, believed by officers at that time to be the death weapon, to his brother-in-law, Otis Hammons, who kept the pistol at Hammons home, 917 N.E. 17th Street, Oklahoma City, Oklahoma. The record shows that after defendant had been arrested on January 16, 1967, the officers went to Hammons' home where Hammons voluntarily surrendered the .380 cal. Llama automatic pistol to officers.

There is nothing in either the record of the trial or the transcript of the Evidentiary Hearing to indicate that defendant lived where the weapon was recovered by officers, or that defendant had any proprietary interest in the property where the weapon was recovered. To the contrary, the record clearly established that defendant lived and stayed at an entirely different address, voluntarily relinquished possession of the gun to his brother-in-law, Hammons.

The .380 cal. Llama having been received in evidence, the question must be answered whether the pistol was originally obtained in violation of defendant's Fourth Amendment rights. More specifically, did the defendant have standing to object to the introduction of the weapon into evidence?

The most recent pronouncement of the law on "standing to object to a search and seizure" is found in Caskey v. State, Vol. 43, O.B.J. 1144, Okl.Cr., 496 P.2d 408. Judge Bussey, in reviewing Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed. 2d 697; Bumper v. North Carolina, 391 U.S. 543, 88 S.Ct. 1788, 20 L.Ed.2d 797; Alderman v. United States, 394 U.S. 165, 89 S.Ct. 961, 22 L.Ed.2d 176; and Lindsey v. State, Okl.Cr., 488 P.2d 935, wrote:

"As this Court is bound by the constitutional decisions of the United States Supreme Court, the holding of this Court in *Lindsey,* supra, is modified to the ex-

tent that a person who does not hold a possessory interest in the premises searched or object seized does not have standing to challenge the legality of a search unless he was *specifically* the one against whom the search was directed."

In regards the recovery of the gun from the brother-in-law, the search was directed against Hammons, not the defendant, and at no time during the recovery of the weapon by the officers was the "privacy" of the defendant violated. Defendant therefore, does not have standing to object to the search directed at recovering the automatic pistol.

■ In order of time, the next search occurred on January 16, 1967, after defendant had been arrested. Officer Larry Yandell, of the Oklahoma City Police Department, testified at the Post-Conviction Evidentiary Hearing conducted in 1971 that after defendant had been informed against for Murder; Yandell, at the direction of the Oklahoma County District Attorney, executed an affidavit for search warrant for defendant's home, presented the affidavit to a Judge Foster, who then issued the search warrant as requested in the affidavit.

Pursuant to the authority of the January 16th, 1967, warrant, a second search of defendant's home was conducted immediately after its issuance. Seized in this second search of defendant's house were three pair of boxer-type men's undershorts, one blue hand towel, a white pillowcase with zipper, and a pair of brown gloves. These items of evidence were either introduced into evidence or directly alluded to at trial.

Although defendant entered an objection to the introduction in evidence of certain of the items, the record is devoid of any Motion to Suppress the evidence resulting from any of the above mentioned searches, including the search on January 16th. As well, the original record is absent any evidence or proof offered by defendant to indicate either of the search warrants were illegally obtained. Nor did defendant offer into evidence either the January 14th or January 16th affidavits for search warrants or the search warrants themselves, before or during trial.

When defendant finally attempted to have the above described affidavits for search warrants and the search warrants made a part of the record on the Post-Conviction Evidentiary Hearing conducted in the Oklahoma County District Court in July, 1971, it developed that the affidavits for search warrant and search warrants had been lost, misplaced, or not filed. In any event, in 1971, the questioned affidavits were not available to either the court, the state, or the defendant; and therefore, they are not part of any record now before this Court.

In short, the defendant, as we can best determine, failed to move to suppress the evidence before or during trial; he failed to have the affidavits for search warrants and the search warrants introduced as part of the original record, and on Post-Conviction Evidentiary Hearing, they are incapable of being introduced.

As the transcript of the Post-Conviction Evidentiary Hearing indicates, defendant, at the July, 1971 hearing, was attempting to attack the sufficiency of the affidavits for the two searches for the reason the affidavits were issued on information and belief and not based on anything within the personal knowledge of the affiant.

As Judge Brett wrote in Chapman v. State, Okl.Cr., 480 P.2d 948 (1970):

"* * * the three propositions offered to wit: alleged unlawful search and seizure; and, a search warrant allegedly issued on an affidavit based purely on information and belief, created by hearsay statements, and allegedly not based on anything within the personal knowledge of the affiant; and the allegation that the premises searched were not those described in the warrant; are all propositions dependent upon the affidavit for issuance of the search warrant, and the search warrant itself. But neither of the two instruments were introduced into evidence and consequently we hold that

these propositions of error are without merit. See: Dowell v. State, 95 Okl.Cr. 377, 245 P.2d 455, and Holland v. State, 58 Okl.Cr. 404, 54 P.2d 216, wherein this Court held:

'The burden of proving the invalidity of a search warrant rests on the defendant, and where he files a motion to suppress evidence *or objects to the introduction of evidence* on the ground the search warrant is not valid he should produce the affidavit and warrant in evidence in support of such motion or objection, or account for the failure to produce and offer other competent evidence to show invalidity. Where he fails to do so, this court *will presume the search was legal.*'" (Emphasis ours.)

Defendant has wholly failed to prove, either through the introduction of the affidavits or warrants into evidence or by other competent evidence that the search warrants, particularly the warrant executed on January 16th, were invalid, and therefore, we must, by law, presume constitutionally valid the third search conducted under authority of a judicially issued warrant.

Aside from the technical question of validity of the January 16th warrant, a reading of the entire record convinces one that even had the items of evidence taken in the January 16th seizure been totally excluded from the trial, the same verdict would have resulted.

■ The fourth search occurred after defendant was booked into the Oklahoma County Jail. He was made to remove all his clothing and was given customary jail clothes. Pubic hairs were removed from the undergarments he was wearing when booked into jail. The pubic hairs became extremely critical to the state from an evidentiary standpoint.

Although defendant raised no constitutional objection to the search of his clothing being worn by him at the time of his arrest, we feel this issue should be treated herein.

It must be emphasized that there was no indication of force or compulsion at the time defendant's wearing apparel was taken by the police officers at the jail.

It was held in Maxwell v. Stephens (1964 DCArk), 229 F.Supp. 205, affirmed (CA 8) 348 F.2d 325, cert.den., 382 U.S. 944, 86 S.Ct. 387, 16 L.Ed.2d 353, reh. den., 382 U.S. 1000, 86 S.Ct. 532, 15 L.Ed. 2d 490, that combing a suspect's hair after a lawful arrest, to obtain a hair specimen and nylon thread, was not violative of the Fourth Amendment as made applicable to the states by the Fourteenth Amendment.

We must, therefore, hold that the search of defendant's clothing for physical evidence, after he was arrested, was a constitutionally valid search.

We therefore conclude the negative finding made by the trial judge to the second enumerated question is in all respects supported by the law and the record and the same is hereby adopted.

The appeal from the Denial of Post-Conviction Application is hereby affirmed. The findings of the trial court are, in all respects, adopted, and the defendant is advised that he has now exhausted all his state remedies.

The Clerk of this Court is directed to forward to the Clerk of the United States District Court for the Western District of Oklahoma, (1) the original record, (2) the transcript of the evidentiary hearing conducted on July 28th, 1971, (3) together with a copy of this Opinion for filing in their Case No. 69–393–Civil, as *Exhibits.*

BUSSEY, P. J., and BRETT, J., concur.