Jack Oral **STEWART**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. A–17178.

Court of Criminal Appeals of Oklahoma.

May 2, 1973.

W. Keith Rapp, Howard, Rapp & Gaskill, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Michael Cauthron, Asst. Atty. Gen., Charles F. Alden, III, Legal Intern, for appellee.

## OPINION

BUSSEY, Judge:

Appellant, Jack Oral Stewart, was convicted in the District Court of Tulsa County, Oklahoma, Case No. CRF–70–1162, for the offense of Robbery with Firearms, After Former Conviction of a Felony, and was sentenced to serve not less than one hundred thirty-three (133) years and not more than three hundred ninety-nine (399) years confinement in the state penitentiary. From said conviction, his appeal to this Court has been perfected.

At the trial, James Lealon Johnston testified that on June 26, 1970, at approximately 10:15 p. m. he met a car, which was traveling on the wrong side of the road, on his way home from work as a Deputy Sheriff in Muskogee, Oklahoma. He stopped said car and found Frank Chase driving the automobile. Johnston testified that after looking into the car and turning his back on the car, four men, occupants of the car, jumped Johnston and removed his pistol, which had plastic stag grips. Johnston identified the defendant as one of the four men who jumped him. According to Johnston, the defendant got in the front seat of Johnston's car and Frank Chase got in the backseat with Johnston's pistol in hand. Johnston stated that he was then forced at gunpoint to drive to Tulsa and that he was offered some money just prior to entering Tulsa. Johnston further testified that he was taken to what he described as the "first house," which belonged to Frank Chase. According to Johnston, he was taken inside the house and beaten and kicked by both defendant and Chase. At this house, Johnston's eyeglasses were removed and Johnston's hands were handcuffed behind his back with his own handcuffs. Again defendant and Chase began beating Johnston. Johnston stated that the handcuffs were not placed tight on his hands and that he freed him-

self and removed his slapper from his pocket and swung and hit both defendant and Chase. Subsequently, Johnston was hit with a hard object in the head. Deputy Johnston testified he was then taken to a "second house." Again, Johnston was forced inside by defendant and Chase. After about five minutes, Johnston was taken out of the house to some railroad tracks where Johnston was kicked and beaten again. Frank Chase left this scene for a moment. Defendant had Johnston's gun. Defendant put the gun in the deputy's back, reached in the deputy's back pocket and removed the deputy's billfold, which contained one dollar. Defendant removed the dollar from the billfold and replaced the billfold into Johnston's pocket. After this, Chase returned and along with the defendant, placed the deputy in his own car. Chase left the scene again and defendant drove the deputy out to the country where the deputy was beaten by the defendant. Defendant finally left the deputy lying in a field with grass thrown on him. Johnston stated that when he felt it safe, he walked to Ed Duty's house. According to Johnston, he found a billfold belonging to Frank Chase in his automobile approximately two weeks after the incident occurred.

Mr. Ed Duty testified that at approximately 3:00 a. m. on June 27, 1970, Deputy Johnston came to his house handcuffed and bleeding. According to Duty, Johnston's hands were cut from the handcuffs and the deputy was weak from loss of blood.

Officer Roger Harmon, a Tulsa Police Officer, testified that he was on duty on June 27, 1970, at approximately 4:00 a. m. and that he was dispatched to Duty's house. Upon arrival at the Duty residence, he found Johnston with handcuffs "stomped" down and observed the deputy bleeding profusely. Due to the deputy's condition, Harmon thought it best to take Johnston to meet the ambulance, which he did.

The State next called Claude Rawlinson, an officer of the Tulsa Police Department, who testified that he stopped the defendant in a vehicle in Osage County while the defendant was driving on June 27, 1970. According to Rawlinson, defendant was advised of his rights. Rawlinson stated that defendant had a laceration over his eye and that defendant gave five or six stories about what had transpired on the previous night and on that morning.

Earl Secrist, a Tulsa Police Officer, stated that he interrogated the defendant about 11:00 a. m. on the morning of June 27, 1970, that the defendant did not seem intoxicated and that the defendant was advised of his constitutional rights to remain silent, to an attorney, to a court appointed attorney if necessary, and that anything defendant might say would be used against him in court. The defendant's statements substantially paralleled the testimony of Officer Johnston. Earlier the same day, Officer Secrist had a conversation with defendant in regard to defendant standing in a lineup. According to Secrist, a notification as to his rights of standing in a lineup was given to defendant, including the fact that defendant had a right to an attorney present for the lineup. This notification was read to defendant, but defendant refused to sign a waiver. However, defendant did agree to stand in the lineup. According to Secrist, defendant was bruised and had a blow on his head at this early morning lineup and defendant was not as alert as he was later on when he gave his statement.

Detective Larry Johnson, of the Tulsa Police Department, testified that he went to the residence of Frank Chase on June 29, 1970, along with other officers. Upon arrival at the house, the door was slightly ajar and Johnson yelled for Chase to surrender himself. Not receiving a reply, Johnson and the other officers entered the premises. Officer Johnson observed a large pool of dried blood and eyeglasses, subsequently returned to Deputy Johnston. Pieces of stag horn pistol grips, a crescent wrench, and a receipt belonging to Frank Chase were also observed by the investigating officers.

The defendant did not testify in his own behalf, but the defense did call three witnesses. The defense called Deputy Johnston, Cecil McCombs, who was a participant in the alleged incident, and Bill Van Zant, Sheriff of Muskogee County, Oklahoma. The testimony elicited from the witnesses manifested that defendant's defense consisted of the facts that money was offered by defendant and Chase and accepted by Deputy Johnston, that Johnston started the fight at the "first house" and that Deputy Johnston concocted the story of the robbery of one dollar ($1.00) to cover his acceptance of the money offered by defendant and Chase.

■ Defendant first contends that because of a conversation or communication between the State's principal witness and the foreman of the jury during the course of trial, the trial court erred in not granting defendant's motion for mistrial. In the case of Hayes v. State, Okl.Cr., 397 P.2d 524, we stated in the first paragraph of the Syllabus:

"A casual conversation between a juror and a witness for the state not relating to the case on trial is generally not prejudicial error, though conversation with a party or other persons about the case is ground for setting aside the verdict."

In the body of the Hayes case, we further stated:

"It is conceded by abundant authority and numerous decisions that after final submission that separation of the jury or any action subjecting them to outside influence is presumed to prejudice the defendant and the burden is upon the state to prove otherwise. Before final submission the courts are clear upon the matter of separation—that the burden of proof is upon the defendant to show prejudice or denial of a fair trial."

In arguing that an exception to the Hayes case exists, defendant cites Fields v. State, Okl.Cr., 364 P.2d 723 wherein we stated:

"We do not think that that should be the rule when the misconduct was between a juror and an officer of the court. Since the state participated in the misconduct the context of the conversation is within the knowledge of the state and they should be called upon to show its nonprejudicial effect."

■ In the instant case, the State's principal witness testified that the conversation did not relate to facts or circumstances of the case and that he did not know that the person he spoke with was a juror. The testimony put on by the defense was not sufficient to show prejudice to the defendant. We do not think that the exception announced in the Fields case is applicable to the case at bar. Hence, we are of the opinion that this proposition is without merit.

■ Defendant's next proposition asserts that the trial court erred in admitting evidence of other crimes unrelated to the crime charged. Defendant specifically asserts that evidence was improperly admitted which tended to show a burglary or attempted burglary by defendant and a companion, that evidence was improperly admitted which pointed out that oral sodomy was attempted upon the complaining witness, and that certain physical evidence of other crimes was improperly admitted. In the case of Moulton v. State, Okl.Cr., 476 P.2d 366 we stated:

"The general rule in this state is that when a defendant is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone and the admission of evidence of other crimes, either prior or subsequent to the offense for which he is on trial is inadmissible. However, evidence of separate and similar offenses is admissible when it is material and proper to show (1) motive, (2) intent, (3) absence of mistake or accident, (4) identity of person charged with the commission of the crime for which an accused is put on trial, and (5) common scheme or plan embracing the two or more crimes so related to each other that proof of one tends to establish

the other. See Epperson v. State, Okl. Cr., 406 P.2d 1017; Parks v. State, Okl. Cr., 457 P.2d 818 and Turnbow v. State, Okl.Cr., 451 P.2d 387."

We feel that the trial court properly admitted the evidence to establish the commission of other offenses as showing motive and intent and that they were so closely related to each other, that proof of one tended to establish the other.

Defendant next asserts that the trial court erred in not dismissing this case for the reason that the charge of Armed Robbery was a part of the same transaction which led to defendant's earlier conviction of Kidnapping with Intent to Extort. Defendant argues that the admission of the evidence of Kidnapping with Intent to Extort violated the constitutional prescription against double punishment for a single transaction, or course of conduct, and that the trial was repugnant to the doctrine of collateral estoppel. In dealing with a similar proposition in the recent case of Grubb v. State, Okl.Cr., 497 P.2d 1305, wherein we held that Robbery and Kidnapping were separate and distinct crimes, we cited with approval Tucker v. State, Okl.Cr., 481 P.2d 167:

" 'We are of the opinion that the fact the crimes were committed in rapid succession does not negate the ultimate fact that separate crimes were committed. To hold otherwise would open the door for persons to commit any number of crimes simultaneously, knowing they could only be punished for one.' "

On the basis of the foregoing and the fact that the proof required for the conviction of robbery and the proof required for the conviction of Kidnapping with Intent to Extort is quite dissimilar, we find that the defendant was not subjected to double jeopardy.

Furthermore, the prosecution for Armed Robbery was permissible and did not violate the doctrine of collateral estoppel. The issues of fact litigated in the earlier trial for Kidnapping with Intent to Extort were not determined in defendant's

favor as required under Ashe v. Swenson, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), and hence, collateral estoppel is not applicable.

Defendant's next proposition asserts that the trial court erred when it overruled defendant's motion to suppress evidence and incourt identification. The defendant complains of an unlawful search and the evidence admitted as a result thereof, complains of the admission of defendant's confession, and complains of an improper lineup and of the incourt identification of the defendant by the complaining witness based on such lineup. In Caskey v. State, Okl.Cr., 496 P.2d 408, we cited the case of Lindsey v. State, Okl.Cr., 488 P.2d 935, wherein we stated:

" 'Thus, we expressly hold a possessory interest in the premises searched or object seized is not the final test of standing to question the reasonableness of a search and seizure. Rather, a person has standing to challenge the legality of a search where he is the victim of the search, one against whom the search was directed.' "

We further stated in the *Caskey* case:

"As this Court is bound by the constitutional decisions of the United States Supreme Court, the holding of this Court in *Lindsey*, supra, is modified to the extent that a person who does not hold a possessory interest in the premises searched or object seized does not have standing to challenge the legality of a search unless he was *specifically* the one against whom the search was directed."

In the instant case, the search was directed against Frank Chase, and the defendant, therefore, does not have standing to object.

In regard to the confession of the defendant which was admitted in evidence, we need only observe that the record indicates that the warnings given to defendant were sufficient to conform with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), that the officer who

interrogated defendant testified that such interrogation occurred several hours after arrest, and that defendant appeared to have all his faculties well in hand. Under such circumstances, we are of the opinion that the waiver given by the defendant with respect to his constitutional rights was knowingly and voluntarily made, that defendant understood the rights he was waiving, and that his confession was admissible in evidence.

■ Further, we are of the opinion that the courtroom identification of the defendant based upon a pre-indictment lineup conducted for identification purposes without notice to and in absence of counsel was properly admitted in evidence.

In Kirby v. Illinois, 406 U.S. 682, 92 S. Ct. 1877, 32 L.Ed.2d 411, the Supreme Court of the United States held that the right to counsel attaches only when the accused has been formally charged with the commission of a crime so that an adversary criminal prosecution is pending against him. Since the lineup, in the case at bar, was held on June 27, 1970, and since a preliminary information was filed against defendant on June 30, 1970, no right to counsel had attached at the lineup. See also Chandler v. State, Okl.Cr., 501 P. 2d 512 and Hill v. State, Okl.Cr., 500 P.2d 1075.

Defendant lastly contends, in three propositions, that the punishment in the case was excessive, that the trial court erred in not granting a mistrial based upon improper comments and conduct of the State during opening statement, trial and closing statement, and that the trial court erred in not granting defendant's motion for mistrial as a result of such conduct, which constituted an "evidentiary harpoon." In Green v. State, Okl.Cr., 481 P.2d 805, this Court cited with approval the case of Hattensty v. State, Okl.Cr., 321 P.2d 710 wherein we stated:

" 'It has been held that similar remarks may not constitute sufficient grounds for reversal where evidence of guilt is clear, but will be considered in connection with the contention that the punishment was excessive as tending to prejudice the defendant with the jury.'

"It has been the practice of this Court that in cases involving 'evidentiary harpoons' where guilt hangs fairly close in the balance, to grant a new trial, while in cases where guilt is strongly established and a new trial would undoubtedly result in conviction, this Court will reduce the sentence."

■ In the instant case, we are of the opinion that the evidence of guilt is clear and that justice would best be served by modifying the judgment and sentence to a term of seventy-five (75) years imprisonment, and as so modified, the judgment and sentence is affirmed.

Modified and affirmed.

BRETT, Judge (dissents):

I must respectfully dissent to this decision for the same reasons stated in Chase v. State, Okl.Cr., 509 P.2d 171 (1973).